GROSS, C.J.
 

 The issue in this non-final appeal is whether the class action waiver in an arbitration agreement between McKenzie Check Advance and one of its customers violated public policy. The trial court found that the waiver went against public policy and denied McKenzie’s motion to compel arbitration. McKenzie appeals. The record below supports the trial court’s conclusion that consumers would not be able to obtain competent counsel in their actions against McKenzie for allegedly usurious rates on its payday loans if the claims could not be brought in a class action. Also, the waiver in this case would ban the borrower from being a member of a class action suit, even one initiated by an “enforcing authority” contemplated by statute. This result would prevent a consumer from vindicating the rights that consumer protection statutes are designed to create and nurture. The class action waiver therefore violates public policy, and we affirm.
 

 Facts
 

 Plaintiffs Donna Reuter and Wendy Betts filed a class action complaint against McKenzie and its majority owners and managing officers, Steve McKenzie and Brenda Lawson, in 2001. The plaintiffs asserted claims based on the Florida’s usury and interest statutes,
 
 [1]
 
 the Florida Consumer Finance Act,
 
 [2]
 
 the Florida Deceptive and Unfair Trade Practices Act (FDUT-PA),
 
 [3]
 
 and the Florida Civil Remedies for
 
 *618
 
 Criminal Practices Act (FCRCPA).
 
 [4]
 
 The gravamen of the plaintiffs’ complaint was that the defendants, under the deceptive guise of a check cashing service, were in reality loaning money to Florida consumers at usurious rates. This case has been up and down the judicial ladder for reasons not relevant here.
 
 [5]
 

 The issue in the instant appeal arose when, in 2007, the plaintiffs amended them complaint to include an additional plaintiff. This new plaintiff was Tiffany Kelly; her contracts with McKenzie included an arbitration agreement with a class action waiver. McKenzie moved to stay the proceedings and compel arbitration. The plaintiffs objected to arbitration, claiming the class action waiver was unconscionable, violated public policy, or both. The challenge to the arbitration agreement necessitated an evidentiary hearing.
 

 At the hearing, Kelly testified she was a 24-year-old single mother with a year of college education. Money was tight — she had been turned down for public assistance and her bank would not give her a loan. A co-worker told her about McKenzie. Though embarrassed, she needed money so desperately that she went to a McKenzie store to obtain a cash advance on her paycheck. She described this first transaction with McKenzie. McKenzie gave her documents to review and initial. While she did not read the documents thoroughly, Kelly admitted that no one discouraged her from
 
 doing so.
 
 She was, however, anxious to receive the advance, and she knew she had to sign the documents to receive it.
 

 The contract’s arbitration agreement included the following provisions:
 

 3. .. THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS
 
 PARENS PATRIAE,
 
 AS A PRIVATE ATTORNEY GENERAL OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.
 

 4. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal’s jurisdiction. Any complaint, counter-claim, third party complaint, class action, or any other dispute which cannot be adjudicated within the jurisdiction of the small claims tribunal
 
 shall
 
 be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal
 
 shall
 
 be resolved
 
 de novo
 
 by binding arbitration.
 

 5. You acknowledge and agree that by entering into this Agreement:
 

 (a) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST U.S. OR RELATED THIRD PARTIES;
 

 (b) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL
 
 *619
 
 CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST U.S. OR RELATED THIRD PARTIES; and
 

 (c) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A
 
 PARENS PATRIAE,
 
 AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST U.S. AND/OR RELATED THIRD PARTIES....
 

 (Emphasis in original.) The class action waiver thus applied to both arbitration and litigation. The contract gave Kelly her choice of arbitrators, required McKenzie to advance the costs of arbitration, and preserved her substantive rights. The parties stipulated that, if the class action waiver was held to be unenforceable, the arbitration agreement should be stricken.
 

 Kelly signed the contract, gave McKenzie a $338 check in exchange for $300 cash, and left. She understood she would have to redeem the check within ten days or McKenzie could present it for payment. During the putative class period, Kelly ultimately engaged in twenty-one more payday loans with McKenzie. She paid a total of $860 in fees. When she entered into the transactions, Kelly testified she assumed they were legal: “If it was against the law, [the defendants] wouldn’t be allowed to operate. At least that’s what I would assume.”
 

 The parties presented evidence on whether the class action waiver left McKenzie’s customers without a -viable means of seeking redress for the alleged violations of Florida law. Kelly presented the expert testimony of three Florida attorneys. The three testified that, absent the class action mechanism, Florida customers who wanted to challenge the practice of payday advance businesses would not be able to obtain competent legal representation.
 

 The first attorney to testify was Bambi Lynn Drysdale, who had practiced consumer litigation in a legal aid office for almost twenty years. She testified it was “virtually impossible” for an individual consumer to find an attorney for a payday loan case. She did not know of any attorneys in Florida who represented individual consumers in such cases because of the resources required and the small amounts involved. These economics changed, however, when class representation was available. Drysdale had never been successful in her attempts to refer individual payday lending cases to other, private lawyers.
 

 Steve Fahlgren testified next. Fahl-gren explained that the issues involved in payday advance lawsuits were complicated. He knew of no lawyer in Florida who would take on such a case for a contingency fee; he implied that individual plaintiffs could not afford to pay by the hour. Although FDUTPA allowed for permissive prevailing party attorney’s fees, the small amounts usually recovered affected the amount of fees awarded by judges. He suggested that costs to bring the claim could exceed $100,000. Fahlgren admitted he had represented individuals on claims much smaller than Kelly’s, but he maintained the issues in those cases were much simpler; for example, an employer wrongfully withholding an employee’s last paycheck. He had never represented someone in a payday loan case and would decline to do so.
 

 The third attorney called by the plaintiffs was Richard Neill. He testified that a competent lawyer would not take on representation of an individual in a payday loan case. Payday loan cases implicated complex issues, such as FDUTPA, usury, and
 
 *620
 
 civil RICO. These issues would take a substantial amount of time. Additionally, the defendant corporations could be expected to retain excellent attorneys. A plaintiffs lawyer had to “rely on a judge adequately compensating him at the end” of the case. Like Fahlgren, Neill testified that most payday loan clients could not afford to pay their attorneys an hourly fee. He concluded: “[I]n order to put the work into the situation that needs to be done, I think it needs to be representation of a class of people so that your claim collectively justifies the effort the lawyer’s got to put out.” Neill stated his opinion applied equally to individual arbitrations because “[fit’s the same process basically, you just substitute an arbitrator for the judge and actually in some ways it’s more expensive and more cumbersome.”
 

 Concerning arbitration, the parties stipulated that no payday loan arbitration claims had been filed against McKenzie from the beginning of its business through October 2001.
 

 In contrast to the plaintiffs’ evidence, McKenzie presented expert testimony from other attorneys. John Koenig stated he would take a payday loan case, that other attorneys would take such cases, and that the legal issues involved in these cases were not particularly complex. Koenig thought that payday loan cases were winnable, and, because of the availability of attorney’s fees he would likely recover fees. Although Koenig had not represented any payday loan plaintiffs himself, he observed represented plaintiffs in individual payday loan cases at pretrial conferences in small claims court. He could not recall any of the specifics of these cases, including the issues. The stipulated testimony of another attorney was similar; that attorney would have represented individual payday loan eases, but had not done so before, and did not know of any other attorney who had.
 

 Through the testimony of Lloyd Comi-ter, McKenzie presented evidence of hundreds of small claims complaints in the state courts in Palm Beach County and Orange County, and the federal Southern District Court, between 2005 and 2007. McKenzie did not specifically locate any usury claims against payday lenders. It did, however, locate cases where attorney-represented plaintiffs brought small-value individual complaints involving FDUTPA, misrepresentation, civil conspiracy, truth-in-lending, fair debt collections violations, fair credit reporting violations, and the like. Nothing in McKenzie’s evidence pinpointed either the plaintiffs’ degree of success in those cases or the adequacy of the compensation of plaintiffs’ counsel. McKenzie did not present the testimony of any lawyer who had seen a represented plaintiff prevail in a payday loan case.
 

 Faced with this evidence, the trial court denied McKenzie’s motion to compel arbitration. In its order, the court found that the class action waiver was substantively but not procedurally unconscionable, so overall the waiver was not unconscionable. Nonetheless, the court found that the class action waiver violated public policy. The statutes the plaintiffs sued upon were remedial in nature, designed not for the sole benefit of an individual but to protect the wider public. The court weighed this remedial purpose against the effect of the class action waiver and found the waiver wanting.
 

 Enforcement of the class action waiver, the court reasoned, “would defeat the implicated statutes’ remedial purposes and undercut their deterrent value.” While the evidence was disputed, the court found that the greater weight of the evidence proved it would be “virtually impossible” for a plaintiff to attract competent counsel
 
 *621
 
 absent the opportunity for a class action. The court found no other reasonable avenue for relief available. Finding that the ban thus violated public policy, the court denied McKenzie’s motion to compel arbitration, and McKenzie appeals.
 

 Analysis
 

 On appeal, McKenzie argues that its class action waiver does not defeat the remedial purposes of the statutes upon which the plaintiffs sued. The plaintiffs urge us to defer to the trial court’s factual findings that enforcement of the waiver would deprive consumers of competent legal representation, so they would be unable to pursue their claims that McKenzie violated Florida law. We agree with the plaintiffs that the trial court’s findings of fact support its legal conclusion that the waiver violates public policy because it defeats the statutes’ remedial purposes.
 

 The trial court’s decision was based in part on factual findings, so it presents this court with a mixed question of law and fact.
 
 Gainesville Health Care Ctr. v. Weston,
 
 857 So.2d 278, 283 (Fla. 1st DCA 2003). The trial court’s factual findings will be upheld if based on competent, substantial evidence.
 
 Id.
 
 Our review of the trial court’s application of the law to its supported factual findings is
 
 de novo. Id.
 
 at 283.
 

 First, we review the general law on the validity of arbitration agreements. Second, we discuss this court’s decision in
 
 Fonte v. AT & T Wireless Services, Inc.,
 
 903 So.2d 1019 (Fla. 4th DCA 2005), explain why
 
 Fonte
 
 is factually distinguishable from this case, and demonstrate why the waiver in this case nullifies a central assumption supporting the holding in
 
 Fonte.
 
 Third, we place
 
 Fonte
 
 and this case in context by discussing class action waiver cases from other jurisdictions. Finally, we explain why our holding pays due respect to separation of powers.
 

 Arbitration Agreements and Contract Law
 

 When evaluating a motion to compel arbitration, a trial court must consider three elements: “(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.”
 
 Seifert v. U.S. Home Corp.,
 
 750 So.2d 633, 636 (Fla.1999). The parties’ arguments fall under the first element— whether the arbitration agreement containing the class action waiver is valid.
 

 The general background for this case was explained by the First District in
 
 Powertel, Inc. v. Bexley,
 
 743 So.2d 570 (Fla. 1st DCA 1999):
 

 An arbitration clause in a contract involving interstate commerce is subject to the Federal Arbitration Act.
 
 See Perry v. Thomas,
 
 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987);
 
 Southland Corp. v. Keating,
 
 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)....
 

 [[Image here]]
 

 Although the states may not impose special limitations on the use of arbitration clauses, the validity of an arbitration clause is nevertheless an issue of state contract law. Section 2 [of the FAA] states that an arbitration clause can be invalidated on such grounds as exist “at law or in equity for the revocation of a contract.” [9 U.S.C. § 2.] Thus, an arbitration clause can be defeated by any defense existing under the state law of contracts. As the Court explained in
 
 [Doctor’s Associates, Inc. v. Casarotto,
 
 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ], “generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA].” 517 U.S. at 687, 116 S.Ct. 1652.
 

 
 *622
 

 Id.
 
 at 573-74 (footnote omitted) (parallel citations omitted).
 

 One of these generally applicable Florida contract defenses is that enforcement of the contract will violate public policy. In particular, a contractual provision that defeats the remedial and deterrent provisions of a statute is contrary to public policy and is unenforceable.
 
 See Blankfeld v. Richmond Health Care, Inc.,
 
 902 So.2d 296, 298-99 (Fla. 4th DCA 2005)
 
 (en
 
 banc). A remedial statute is one that is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good.
 
 Adams v. Wright,
 
 403 So.2d 391, 394 (Fla.1981). Consumer protection statutes such as FDUTPA are remedial in nature and are to be broadly construed to effectuate their purpose.
 
 See Beacon Prop. Mgmt., Inc. v. PNR, Inc.,
 
 890 So.2d 274, 279 (Fla. 4th DCA 2004).
 

 Having reviewed this framework, we now turn to the specific issue in this case: whether McKenzie’s class action waiver violates public policy because it defeats the remedial provisions of Florida statutes.
 

 Fonte
 
 Does Not Mandate Reversal
 

 We previously encountered the class action waiver issue in
 
 Fonte v. AT & T Wireless Services, Inc.,
 
 903 So.2d 1019 (Fla. 4th DCA 2005), where we held that an arbitration clause’s class action waiver did not defeat FDUTPA’s remedial purpose. In asking us to reverse the trial court’s denial of them motion, McKenzie asserts that the trial court ignored
 
 Fonte.
 
 We conclude, however, that this case is factually distinguishable from
 
 Fonte.
 

 In
 
 Fonte,
 
 the plaintiff filed a proposed class action against AT & T alleging, among other things, a violation of FDUT-PA by unilaterally changing customer rate plans.
 
 Id.
 
 at 1021. AT & T moved to stay the proceeding and compel arbitration.
 
 Id.
 
 at 1023. The trial court held an evi-dentiary hearing, at which the plaintiff and AT & T’s salesman testified.
 
 Id.
 
 at 1021-23. They testified on the circumstances surrounding the transaction in which the plaintiff bought wireless service from AT & T.
 
 Id.
 
 The terms and conditions of the service agreement contained an arbitration clause in which customers waived any right to pursue their claims in class actions.
 
 Id.
 
 at 1022. Because no attorney testified at the hearing, there was no testimony on whether the class action waiver affected the ability of consumers to obtain competent legal representation in pursuing their claims against AT <& T. The trial court granted AT & T’s motion to compel arbitration, finding that the challenged contractual provisions were not procedurally or substantively unconscionable.
 
 Id.
 
 at 1023. The plaintiff appealed the order and argued that the arbitration clause was unenforceable.
 
 Id.
 

 This court considered whether AT & T’s class action waiver was void as a matter of law; that is, whether it defeated the remedial purpose of FDUTPA.
 
 [6]
 

 Id.
 
 at 1024. We held that “in this case the arbitration clause’s bar on class representation does not defeat any of the remedial purposes of FDUTPA.”
 
 Id.
 
 The court quoted
 
 Randolph v. Green Tree Financial Corp.-Alabama,
 
 244 F.3d 814, 817 (11th Cir.2001):
 

 [A] class action is an available, important means of remedying [certain] violations .... However, there exists a difference between the availability of the class action tool, and possessing a blanket right to that tool under any circumstance .... An intent to create such a
 
 *623
 
 “blanket right,” a non-waivable right, to litigate by class action [must] be gleaned from the text and the legislative history.
 

 Fonte,
 
 903 So.2d at 1024-25 (alterations in original). We did not find the intent in FDUTPA’s text or history to create that non-waivable right.
 
 Id.
 
 at 1025.
 

 More importantly, we noted that “there are numerous enforcement mechanisms which can protect consumers other than class actions,” including small claims suits, arbitration, and administrative enforcement.
 
 Id.
 
 “This additional enforcement mechanism presents,” we wrote, “an added deterrent effect to violators if private enforcement actions should fail to fulfill that role,” as well as “another possible avenue of recovery for consumers.”
 
 Id.
 
 Accordingly, on the issue of whether the class action waiver violated public policy, we affirmed.
 
 Id.
 

 McKenzie invites us to read
 
 Fonte
 
 as creating a categorical rule that class action waivers do not violate public policy. We reject this invitation. Instead, we agree with the trial court that
 
 Fonte
 
 is distinguishable on its facts. In
 
 Fonte,
 
 the plaintiffs did not present the trial court with evidence that competent counsel would not represent individual plaintiffs on these small claims. Without such evidence, we could not say in
 
 Fonte
 
 that the class action waiver there violated public policy.
 

 Here, however, the plaintiffs presented expert testimony from three Florida attorneys. The attorneys testified that Florida customers who wanted to challenge the practice of payday loan businesses would not be able to obtain competent representation absent the class action mechanism. This was because the issues were complex and time-consuming — and there was a substantial risk that a circuit court would award inadequate compensation at the end of a successful case. In our view, this evidence established that individuals could not secure competent representation to pursue small claims actions against McKenzie. Indeed, one attorney testified that she had never been able to successfully refer a payday loan case to a private attorney.
 

 The above conclusion likewise applies to the part of the waiver concerning arbitration. One of the attorneys testified that the conclusion that individual plaintiffs could not obtain counsel for small claims suits also applied to individual arbitration claims. The parties’ stipulation that no arbitration claims had been filed against McKenzie from the start of its business through October 2001 corroborates the attorney’s testimony.
 

 Competent, substantial evidence supports the trial court’s finding that no other reasonable avenue for relief would be available if it enforced the class action waiver. Attorneys would not represent consumers in individual small claims suits. The inability to bring a class action suit against McKenzie would eviscerate the remedial purposes of the relied-upon statutes. Only with the availability of class representation would consumers’ rights in these payday loan transactions be vindicated. The class action waiver violates the public policy of FDUTPA and FCRCPA. Pursuant to the parties’ agreement below that the class action waiver cannot be severed, the trial court properly struck the arbitration agreement.
 

 The facts were disputed. The trial court chose to rely on the plaintiffs’ evidence, and it was privileged to do so. We will not disturb the court’s resolution of the disputed evidence on appeal.
 

 A second factor both supports the trial court’s conclusion that the class action waiver violated public policy and distinguishes this case from
 
 Fonte.
 
 The waiver in this case precludes a borrower from
 
 *624
 
 “participat[ing] as a member of a class of claimants, in any lawsuit filed against [McKenzie] and/or related third parties.” In
 
 Fonte,
 
 this court found that a class action ban was not violative of public policy in part because of the availability of the enforcing authority to bring actions for the benefit of consumers. Under FDUTPA, section 501.207(l)(c) permits the enforcing authority to bring “an action on behalf of one or more consumers ... for the actual damages caused by an act or practice in violation of this part.” The class action waiver here purports to prevent a borrower from joining this type of government initiated enforcement action, thus eviscerating a potent enforcement mechanism put in place by the Legislature to deter deceptive or unfair trade practices. Because the arbitration provision prevents a consumer from benefitting from even those cases brought by an enforcing authority, it violates public policy.
 

 In coming to our conclusion, we have reconciled the tension between the policy generally favoring the enforcement of arbitration agreements,
 
 see Seifert v. U.S. Home Corp.,
 
 750 So.2d 633, 636 (Fla.1999), and the public policies underlying the remedial statutes. Because the FAA provides that general contract law defenses can invalidate arbitration agreements, these sets of policies do not stand on equal footing.
 
 See Powertel, Inc. v. Bexley,
 
 743 So.2d 570, 573-74 (Fla. 1st DCA 1999). In this case, the general policy in favor of arbitration must give way to the Florida public policy that prompted the legislature to enact consumer protection statutes. The public interest favors a consumer’s ability to effectively pursue statutory rights over McKenzie’s ability to craft a contract that nullifies the statutory protections.
 

 A contrary finding is not required by our reliance in
 
 Fonte
 
 on
 
 Randolph,
 
 where the Eleventh Circuit enforced a class action waiver.
 
 Randolph
 
 and similar cases, which consider the validity of class action waivers in light of federal statutes, are distinguishable from cases evaluating class action waivers in light of state law.
 

 The precise issue in
 
 Randolph
 
 was whether the Federal Truth in Lending Act’s text, its history, or an inherent conflict between arbitration and TILA’s policies demonstrated that Congress intended to grant to individuals a non-waivable right to class action. 244 F.3d at 817-19. This was because federal statutory claims should be arbitrated pursuant to agreements to do so absent clear congressional direction to the contrary.
 
 Id.
 
 at 816-17. The court held that, while TILA’s text and history specifically contemplated class actions, Congress had not intended to grant to individuals a non-waivable right to class action.
 
 Id.
 
 at 817-18.
 
 See also Johnson v. W. Suburban Bank,
 
 225 F.3d 366 (3d Cir. 2000);
 
 Snowden v. Checkpoint Check Cashing,
 
 290 F.3d 631 (4th Cir.2002);
 
 Livingston v. Assocs. Fin., Inc.,
 
 339 F.3d 553 (7th Cir.2003);
 
 Bowen v. First Family Fin. Servs., Inc.,
 
 233 F.3d 1331 (11th Cir.2000).
 

 Cases like
 
 Randolph,
 
 “which address whether a federal statute impliedly limits arbitration, are obviously not binding on this court when it decides whether class [action] waivers are unconscionable [or otherwise invalid] under state law principles.”
 
 Discover Bank v. Superior Court,
 
 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1114 n. 6 (2005). In any case, holding that a class action waiver does not apply to this case’s claims against a payday lender does not create a blanket right to class action in the relevant statutes.
 

 Further, McKenzie argues that invalidating its class action waiver will turn the procedural vehicle of the class action into a substantive right. To the contrary, in
 
 *625
 
 holding this class action waiver void as against public policy, we allow these plaintiffs the use of the procedural vehicle of a class action to pursue their claims against McKenzie. To do otherwise, given the facts of this case, would mean the plaintiffs would be deprived of the substantive rights the legislature has given them in the remedial statutes.
 
 See id.
 
 at 1109 (“[C]lass actions and arbitrations are, particularly in the consumer context, often inextricably linked to the vindication of substantive rights. Affixing the ‘procedural’ label on such devices understates their importance and is not helpful in resolving the unconscionability issue.” (footnote omitted));
 
 Kristian v. Comcast Corp.,
 
 446 F.3d 25, 54 (1st Cir.2006) (“[T]he class action (and class arbitration) [is] a procedure for redressing claims— and not a substantive or statutory right in and of itself — [but] we cannot ignore the substantive implications of this procedural mechanism.”).
 

 Other Cases on Class Action Waivers
 

 McKenzie asserts that
 
 Fonte
 
 dictates a reversal of the trial court’s order. But, in reaching our holding, we are mindful that neither
 
 Fonte
 
 nor this case exists in a legal vacuum. Courts around the country have struggled to resolve whether class action waivers are invalid under state law.
 
 See generally
 
 William M. Howard, Annotation,
 
 Validity of Arbitration Clause Precluding Class Actions,
 
 13 A.L.R.6th 145 (2006) (Westlaw version updated weekly). We have discerned three categories of such cases.
 
 [7]
 
 Our review of the cases supports our holding.
 

 The first category involves statutes that provide for fees; no evidence is presented indicating that awards will be inadequate or unlikely. Here, courts will assume that an individual plaintiff can obtain competent representation. Our decision in
 
 Fonte
 
 is an example of one of these cases. Another is
 
 Jenkins v. First American Cash Advance of Georgia, LLC,
 
 400 F.3d 868 (11th Cir.2005), upon which McKenzie relies.
 
 [8]
 

 Fonte
 
 is consistent with
 
 Jenkins.
 

 In
 
 Jenkins,
 
 the district court denied a pay day lender’s motion to compel arbitration based on arbitration clauses containing class action waivers.
 
 Id.
 
 at 871-73. The district court found the clauses unen
 
 *626
 
 forceable as unconscionable.
 
 Id.
 
 at 877. The district court had “speculated that a borrower who attempts to pursue her claim individually based on one loan transaction would ‘probably’ be unable to obtain a lawyer.”
 
 Id.
 
 (quoting
 
 Jenkins v. First Am. Cash Advance of Ga., LLC,
 
 313 F.Supp.2d 1370, 1375 (S.D.Ga.2003)).
 

 Relying on its previous decisions enforcing class action waivers, the Eleventh Circuit reversed.
 
 Id.
 
 at 877-78. “In addition,” the court wrote, “the district court’s contention that consumers would likely be unable to obtain legal representation without the class action vehicle is unfounded.”
 
 Id.
 
 at 878. Because Georgia’s RICO statutes provided for prevailing party attorney’s fees, the court concluded that the consumer “can presumably recover attorneys’ fees and costs if she prevails.”
 
 Id.
 
 Similarly, “arbitration agreements prohibiting class action relief do not necessarily choke off the supply of lawyers willing to pursue claims on behalf of debtors.”
 
 Id.
 
 (quotation omitted). There was no evidence presented in the district court that the consumers would be unable to find competent attorneys to handle them cases. Nonetheless, the Eleventh Circuit speculated that, “when the opportunity to recover attorneys’ fees is available, lawyers will be willing to represent such debtors in arbitration.”
 
 Id.
 

 Ultimately, the Eleventh Circuit held that “precluding class action relief will not have the practical effect of immunizing” the defendant pay-day lender.
 
 Id.
 
 Because the arbitration clauses allowed consumers to vindicate their substantive rights in arbitration, the class action waiver did not make the clauses substantively unconscionable.
 
 Id.
 
 Like
 
 Fonte,
 
 this case is different from
 
 Jenkins
 
 because neither the trial court nor this court needs
 
 to
 
 speculate or presume — the plaintiffs presented expert testimony on their ability to secure counsel which the trial court found to be credible.
 

 In the second category of cases are statutes that do not provide for awards of attorney’s fees, and statutes that provide for them but limit the probability they will be awarded or limit their amount. In such cases, a court may examine the statutes themselves to determine that an individual plaintiff cannot obtain competent representation. McKenzie cites to
 
 Dale v. Comcast Corp.,
 
 498 F.3d 1216 (11th Cir.2007), which falls into this category.
 
 [9]
 

 In
 
 Dale,
 
 the Eleventh Circuit reversed an order granting Comcast’s motion to compel arbitration, finding the class action waiver unconscionable.
 
 Id.
 
 at 1218-19. The circuit court’s decision turned on the statutes on which the plaintiffs sued. The Georgia statute did not allow attorney’s fees unless the plaintiff pleaded and the jury found that the defendant corporations acted in bad faith.
 
 Id.
 
 at 1222-23. The federal statute, 47 U.S.C. § 542, did not
 
 *627
 
 provide for attorney’s fees.
 
 Id.
 
 at 1217, 1222.
 

 The Eleventh Circuit declined to read a previous case,
 
 Caley v. Gulfstream Aerospace Corp.,
 
 428 F.3d 1359 (11th Cir.2005), as “requir[ing] us to conclude the class action waiver is enforceable.”
 
 Id,,
 
 at 1221. The statutes in
 
 Caley
 
 mandated reasonable attorney’s fees.
 
 See id.
 
 at 1221 n. 8. Thus, “[i]n
 
 Caley,
 
 we determined only that under the specific facts of that case, the [dispute resolution policy] prohibiting class actions was enforceable, not that every class action waiver is enforceable under Georgia law.”
 
 Id.
 
 at 1221 (footnote omitted). Following from this observation, the Eleventh Circuit adopted a “totality of the circumstances” test under which class action waivers would be considered on a case-by-case basis.
 
 Id.
 
 at 1224.
 

 The federal circuit court concluded that, “[without the benefit of a class action mechanism, the subscribers would effectively be precluded from suing Comcast.”
 
 Id.
 
 at 1223-24. This was because it would “be difficult for a single subscriber to obtain representation” when the federal statute did not provide for attorney’s fees and the Georgia statute provided for them only when the defendant corporation acted in bad faith.
 
 Id.
 
 at 1224. In particular, “the potential recovery of attorneys’ fees and litigation costs under [the Georgia statute] does not provide the same incentive for an attorney to represent an individual plaintiff as the automatic, or likely, award of fees and costs available to a prevailing plaintiff for the claims asserted” in
 
 Jenkins, Caley,
 
 and
 
 Randolph. Id.
 
 at 1223. Thus, “based on the totality of circumstances,” the court concluded that “the Comcast class action waiver is unconscionable.”
 
 Id.
 
 at 1224.
 

 We recognize that the instant case differs from
 
 Dale,
 
 because, unlike in that case, the statutes here at issue allow for attorney’s fees, FCRCPA entitles the prevailing party to reasonable fees, and FDUTPA allows for awards of reasonable fees and costs. That these statutes provide for fees is not, however, dispositive.
 

 Like the first category, the third category of cases addressing class action waivers also involves statutes that provide for fees. But, in these cases, the plaintiff presents evidence that adequate fee awards are unlikely. Confronted with such evidence, courts need not assume that the plaintiff can obtain competent counsel for an individual claim. It is in this category that we find the class action waiver case closest to the instant one:
 
 Kristian v. Comcast Corp.,
 
 446 F.3d 25 (1st Cir.2006).
 
 [10]
 

 
 *628
 
 In
 
 Kristian,
 
 the First Circuit invalidated a class arbitration waiver because it prevented the plaintiffs from vindicating their statutory rights. The court essentially applied state contract law, because section 2 of the FAA operated to import state contract law doctrines into federal law, creating a “federal substantive law of arbitrability.”
 
 Id.
 
 at 63-64. The plaintiffs had sued Comcast for violations of state and federal antitrust statutes, and Comcast invoked the arbitration agreements.
 
 Id.
 
 at 29. The district court held that the arbitration agreements did not apply to the plaintiffs.
 
 Id.
 

 The First Circuit disagreed, making it necessary to address the class arbitration waiver.
 
 Id.
 
 The court began by writing that “the legitimacy of the arbitral forum rests on the presumption that arbitration provides a fair and adequate mechanism for enforcing statutory rights.”
 
 Id.
 
 at 54 (quotation omitted). It found the “[t]he bar on class arbitration threatens the premise.”
 
 Id.
 

 Both the state and federal statutes permitted the recovery of reasonable attorney’s fees.
 
 See id.
 
 at 30-31 (citing Mass. Gen. L. ch. 93, § 12; 15 U.S.C. § 16(a)). The circuit court relied on the plaintiffs’ unopposed expert affidavits, “which describe the great expense and labor required by such a case.”
 
 Id.
 
 at 58. The experts agreed “that to prosecute their antitrust claims successfully, Plaintiffs will have to undertake an elaborate factual inquiry” leading to significant fees and costs — all for an individual recovery that “will range from a few hundred dollars to a few thousand dollars at most.”
 
 Id.
 
 This complexity cast doubt on the assertion “that the availability of attorney’s fees provides the necessary incentive” for individual actions.
 
 Id.
 
 Attorneys would have to invest a large outlay for only a portion of an individual plaintiffs small recovery, and recovery itself was not certain.
 
 Id.
 
 at 58-59. Given the likelihood that an attorney would not be paid at all, “the appeal for an attorney to take on an individual plaintiffs antitrust claim shrinks even further.”
 
 Id.
 
 at 59.
 

 Accordingly, the class arbitration waiver undermined the presumption that arbitration provided a fair and adequate mechanism for enforcing statutory rights.
 
 Id.
 
 at 58. The affidavits showed that, “without some form of class mechanism — be it class action or class arbitration — a consumer antitrust plaintiff will not sue at all.”
 
 Id.
 
 This result would undercut the remedial and deterrent effects of antitrust laws, and essentially immunize Comcast.
 
 Id.
 
 at 61. Because the plaintiffs “will be unable to vindicate their statutory rights,” the court held the class arbitration waiver unenforceable.
 
 Id.
 
 at 61-63.
 

 Both
 
 Kristian
 
 and this case involve statutes that permit the recovery of attorney’s fees; this case also involves a statute that mandates fees. The evidence in this case established that, even if an individual plaintiff prevailed, he may be able to recover only an inadequate amount in fees. Given the expert testimony relied upon by the trial court, an inadequate award is likely even when fees are mandatory. This result prevents individual plaintiffs from obtaining competent representation to pursue their claims against payday lenders. Like the class arbitration waiver in
 
 Kristian,
 
 the class action waiver in this case, which prohibits both class arbitration and litigation, prevents individual plaintiffs from vindicating their statutory rights.
 

 Separation of Powers
 

 Finally, we emphasize that our decision respects the separation of powers. Public policy is best determined by the legislature and not the courts. The legislature made its policy choice clear, however, when it enacted the statutes at issue; these statutes introduce regulations conducive to the public good, facilitate both pub-
 
 *629
 
 lie and private enforcement of the statutes, and provide for the redress of violations.
 

 Instead of overturning the legislature’s choices, the trial court’s factual determinations reflect the principle underlying the decisions invalidating class action waivers: In some circumstances, the class action procedure ensures that a remedial statute’s provisions for private enforcement achieve their legislatively intended effect when they otherwise would not.
 

 Indeed, nothing in the remedial statutes implicated in this case prohibits or disapproves of class actions.
 
 Cf. Honig v. Comcast of Ga. I, LLC,
 
 537 F.Supp.2d 1277, 1289 (N.D.Ga.2008) (finding a class action waiver not unconscionable because “[i]t is inconceivable that precluding class-wide relief is against public policy when the Georgia legislature expressly excluded this avenue of relief’ under the statute the plaintiff relied on). Rather, the circuit court’s decision gives life to those remedial purposes of the statute which prompted the legislature to take action in the first place.
 

 ⅞? ⅜ ⅜ :[{ ⅜ ⅜
 

 In sum, we affirm the trial court’s order denying McKenzie’s motion to compel arbitration. Because payday loan cases are complex, time-consuming, involve small amounts, and do not guarantee adequate awards of attorney’s fees, individual plaintiffs cannot obtain competent counsel without the procedural vehicle of a class action. The class action waiver prevents consumers from vindicating their statutory rights, and thus violates public policy.
 

 As these class action waivers frequently involve transactions amenable to suit under remedial statutes like FDUTPA, and such waivers are used more and more, we certify
 
 [11]
 
 the following question to our supreme court as one of great public importance:
 

 WHEN ASSERTED IN A CLAIM INVOLVING A VIOLATION OF FDUT-PA OR ANOTHER REMEDIAL STATUTE, DOES A CLASS ACTION WAIVER IN AN ARBITRATION AGREEMENT VIOLATE PUBLIC POLICY WHEN THE TRIAL COURT IS PERSUADED BY EVIDENCE THAT SUCH A WAIVER PREVENTS CONSUMERS FROM OBTAINING COMPETENT COUNSEL?
 

 Affirmed.
 

 WARNER, J., and FISHMAN, JANE D., Associate Judge, concur.
 

 [1]
 

 .
 
 See Ch.
 
 687, Fla. Stat. (2001) (prohibiting usurious contracts).
 

 [2]
 

 . Ch. 516, Fla. Stat. (2001). This statute is not at issue here.
 

 [3]
 

 . Ch. 501, pt. II, Fla. Stat. (2001) (prohibiting deceptive and unfair trade practices).
 
 See also
 
 § 501.2105(1) (providing that, “[i]n any civil litigation resulting from an act or practice involving a violation of this part, ... the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party”); § 501.2105(3) (“The trial judge may award
 
 *618
 
 the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for die hours actually spent on the case....").
 

 [4]
 

 . Ch. 772, Fla. Stat. (2001) (providing for civil actions for certain criminal practices).
 
 See also
 
 § 772.104 (authorizing treble actual damages and entitling the prevailing party to reasonable attorney’s fees).
 

 [5]
 

 .
 
 See Reuter v. McKenzie Check Advance of Fla., LLC,
 
 825 So.2d 1070 (Fla. 4th DCA 2002);
 
 Betts v. McKenzie Check Advance of Fla., LLC,
 
 879 So.2d 667 (Fla. 4th DCA 2004),
 
 aff'd,
 
 928 So.2d 1204 (Fla.2006);
 
 McKenzie Check Advance of Fla., LLC v. Betts,
 
 27 So.3d 661 (Fla.2010).
 

 [6]
 

 . In another part of the opinion, we held that "the arbitration clause’s bar on an award of attorney's fees defeated] a remedial purpose of FDUTPA,” which was to facilitate private enforcement of the act’s provisions, and severed that part from the clause.
 
 Id.
 
 at 1024.
 

 [7]
 

 . Some of these cases involve unconscionability, an issue distinct from public policy.
 
 See Blankfeld v. Richmond Health Care, Inc.,
 
 902 So.2d 296, 299 (Fla. 4th DCA 2005) (en banc). But because unconscionability always includes the element of vindication of statutory rights, we find the cases instructive.
 
 See Kristian v. Comcast Corp.,
 
 446 F.3d 25, 60 n. 22 (1st Cir.2006);
 
 Muhammad v. County Bank of Rehoboth Beach Delaware,
 
 189 N.J. 1, 912 A.2d 88, 98-100 (2006).
 

 [8]
 

 . Other cases in this category include:
 
 Cicle v. Chase Bank USA,
 
 583 F.3d 549, 555-56 (8th Cir.2009) (applying Missouri law and holding that a class action waiver did not violate public policy because, among other reasons, Missouri’s FDUTPA equivalent permitted an award of attorney's fees);
 
 Zekri v. Macy’s Retail Holdings, Inc.,
 
 No. 1:10-CV-1740-MHS, 2010 WL 4660013 (N.D.Ga. Nov. 4, 2010) (applying Georgia law and holding in a federal Fair Labor Standards Act action that a class action waiver was not unconscionable because "[t]here is no evidence that the amount of individual claimants’ recoveries would be negligible, and the arbitration agreement provides for the recovery of attorney’s fees and costs”);
 
 Strand v. U.S. Bank Nat’l Assn ND,
 
 693 N.W.2d 918, 926 (N.D.2005) (applying North Dakota law and holding that a class action waiver was not unconscionable where the statute provided for attorney’s fees to the prevailing party and the plaintiff ”point[ed] to no empirical evidence that all attorneys would be unwilling to litigate these claims”); and
 
 Delta Funding Corp. v. Harris,
 
 189 N.J. 28, 912 A.2d 104, 115 (2006) (applying New Jersey law and holding that a class arbitration waiver was not unconscionable where the statutes the plaintiff sued on mandated attorney's fees to the prevailing plaintiff).
 

 [9]
 

 . Other cases in this category include:
 
 S.D.S. Autos, Inc. v. Chrzanowski,
 
 976 So.2d 600 (Fla. 1st DCA 2007) (applying Florida law and holding that a class action waiver violated public policy when the part of FDUTPA that applied to car dealers provided for attorney’s fees “as are reasonable in light of the amount of the individual’s actual damages”), and
 
 Gordon v. Branch Banking & Trust Co.,
 
 666 F.Supp.2d 1347 (N.D.Ga.2009) (following
 
 Dale
 
 to hold that a class action waiver was unconscionable under Georgia law because an award of attorney’s fees was not likely under the statutes the individual plaintiff sued on, one of which was the same Georgia statute at issue in Dale).
 
 Cf. Caban v. J.P. Morgan Chase & Co.,
 
 606 F.Supp.2d 1361 (S.D.Fla.2009) (applying Delaware law and holding that a class action waiver was unconscionable because the attorney's fees provision in FDUTPA, under which the individual plaintiff sued, did not apply to the federally regulated Chase, and no attorney would represent the plaintiff on a contingent basis).
 

 [10]
 

 . Other cases in this category include:
 
 Scott v. Cingular Wireless,
 
 160 Wash.2d 843, 161 P.3d 1000, 1003-04 (2007) (applying Washington state law and holding that a class action waiver was unconscionable and violated public policy where the plaintiffs presented the expert affidavit of a consumer law attorney who explained that individual claims "are too small and too complex factually and legally” and "it is very unlikely that any other private practice attorney would be willing to [take on an individual claim]”); and
 
 Woods v. QC Financial Services, Inc.,
 
 280 S.W.3d 90, 97-98 (Mo.Ct.App.E.D.2008) (applying Missouri law and holding that a class action waiver was unconscionable where the evidence, including testimony by attorneys, demonstrated that individual plaintiffs could not obtain representation in payday loan cases).
 
 Cf. Discover Bank v. Superior Court,
 
 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1109-10 (2005) (applying California law and holding that a class action waiver was unconscionable, but without any evidence on the availability of attorney’s fees; the court was not "persuaded by the rationale stated by some courts that the potential availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the problem posed by such class action waivers,” especially since the rationale was based on "unsupported assertions”);
 
 Cooper v. QC Fin. Servs., Inc.,
 
 503 F.Supp.2d 1266 (D.Ariz.2007) (same, but applying Arizona law).
 

 [11]
 

 . For example, the Eleventh Circuit recently certified questions to our supreme court involving the enforceability of class action waivers in arbitration agreements.
 
 See Pendergast v. Sprint Nextel Corp.,
 
 592 F.3d 1119 (11th Cir.2010). The Eleventh Circuit noted that Florida law on whether a class action waiver violates public policy is unsettled.
 
 Id.
 
 at 1142-43. Accordingly, the certified questions asked the supreme court whether the waivers were unconscionable under Florida law or "void under Florida law for any other reason.”
 
 Id.
 
 1143-44.