[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10612
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 20, 2012
JOHN LEY
CLERK

D. C. Docket No. 08-20551-CV-PAS

JAMES PENDERGAST,
individually and on behalf of
all others similarly situated,

Plaintiff-Appellant,

versus

SPRINT NEXTEL CORPORATION,

Defendant,

SPRINT SOLUTIONS, INC.,
SPRINT SPECTRUM L.P.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 20, 2012)

Before CARNES and HULL, Circuit Judges, and GOLDBERG,* Judge.

HULL, Circuit Judge:

Plaintiff-Appellant James Pendergast, a former wireless telephone customer of Defendants-Appellees Sprint Solutions, Inc. and Sprint Spectrum, L.P., (collectively, "Sprint"), sued Sprint on behalf of himself and a similarly situated class, alleging Sprint charged improper roaming fees for calls placed within Sprint's coverage areas. Sprint moved to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), as provided by the Terms and Conditions of Sprint's service contract with Pendergast.

The district court granted Sprint's motion to compel arbitration and dismissed the case. The district court found that the arbitration and class action waiver provisions in the Terms and Conditions are valid and enforceable.

Pendergast appealed. Pendergast argued that the class action waiver is unconscionable under Florida law, the arbitration clause and class action waiver clause are not severable, and thus the invalidity of the class action waiver is fatal to the arbitration clause as well.

---

*Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

On January 4, 2010, this Court found that resolution of the appeal depended on unsettled questions of Florida law and certified four questions to the Florida Supreme Court. Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1143–44 (11th Cir. 2010). The Florida Supreme Court accepted certification of the questions.

On April 27, 2011, after oral argument in the Florida Supreme Court but before it issued a decision, the United States Supreme Court decided AT&T Mobility LLC v. Concepcion, — U.S. —, 131 S. Ct. 1740 (2011). In Concepcion, the United States Supreme Court held that the FAA preempted California's judicial rule on the unconscionability of class action waivers in consumer contracts. Id. at 1753.

On May 4, 2011, Sprint moved this Court to withdraw the certified questions and to affirm summarily in light of Concepcion. Out of deference to our state court colleagues, we denied Sprint's motion so that the Florida Supreme Court would have the opportunity to decide whether it wished to answer the questions we certified or decline jurisdiction and return the case to us for further proceedings in light of Concepcion.

Sprint moved the Florida Supreme Court to decline jurisdiction. On July 17, 2012, the Florida Supreme Court granted Sprint's motion and the case returned

3

to this Court.  After review, we affirm the district court's judgment granting

Sprint's motion to compel arbitration.

## I.  BACKGROUND

The factual background is set forth in detail in our earlier opinion.  See

Pendergast, 592 F.3d at 1121–31.  We repeat only the most pertinent details here.

**A.      Service Contracts Between Pendergast and Sprint**

In August 2001, Pendergast bought a wireless telephone from Sprint, agreed

to a two-year service contract for Sprint wireless service, and began using Sprint

wireless service.  The contract included Sprint's then-applicable Terms and

Conditions of Service.  At that time, Sprint's May 2001 Terms and Conditions

were in effect, and they contained a "changes to agreement" clause providing that:

(1) Sprint could change the terms of its agreement with Pendergast at any time; (2)

Pendergast accepted such changes by using his phone on or after the changes'

effective date; and (3) Pendergast could terminate his service if he did not wish to

accept the changes.  The contract provided Pendergast with fourteen days after

activating his phone to terminate Sprint service without penalty.

The May 2001 Terms and Conditions also contained an arbitration clause

that required arbitration of disputes between Pendergast and Sprint and stated that

the FAA governed whether a claim was subject to arbitration:

4

**ARBITRATION OF DISPUTES.** ANY CLAIM, CONTROVERSY OR DISPUTE, WHETHER SOUNDING IN CONTRACT, STATUTE, OR TORT, INCLUDING FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, RELATED DIRECTLY OR INDIRECTLY TO THE SERVICES . . . SHALL BE RESOLVED BY ARBITRATION AS PRESCRIBED IN THIS SECTION. THE FEDERAL ARBITRATION ACT, NOT STATE LAW, GOVERNS THE QUESTION OF WHETHER A CLAIM IS SUBJECT TO ARBITRATION.

The May 2001 Terms and Conditions did not include a class action waiver.

In July 2005, Pendergast bought a new phone from Sprint and signed a new contract with Sprint, a two-year PCS Advantage Agreement. Pendergast's account number with Sprint remained the same.[1]

The June 2004 Terms and Conditions were in effect when Pendergast entered into the PCS Advantage Agreement. The June 2004 Terms and Conditions provided that: (1) Pendergast accepted the Terms and Conditions by using or paying for Sprint service; (2) Sprint could change the Terms and Conditions at any time, and using or paying for service on or after the date of the change constituted acceptance of the change; and (3) Pendergast could terminate

---

[1]Pendergast bought a total of four phones from Sprint from 2001 to 2006. Each time, Sprint gave him a copy of its then-current Terms and Conditions. Pendergast's monthly bills consistently told Pendergast that the current Terms and Conditions were available on Sprint's website.

the agreement without penalty within 30 days after material, adverse changes were made.

The June 2004 Terms and Conditions also contained an arbitration clause that required arbitration of all disputes except for those within small claims court jurisdiction. Importantly, the new arbitration clause included a class action waiver. The June 2004 arbitration clause stated:

> **MANDATORY ARBITRATION OF DISPUTES:** INSTEAD OF SUING IN COURT, YOU AND SPRINT AGREE TO ARBITRATE ANY AND ALL CLAIMS, CONTROVERSIES OR DISPUTES AGAINST EACH OTHER ARISING OUT OF OR RELATING TO THIS AGREEMENT . . . . THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT AND ITS PROVISIONS, NOT STATE LAW, GOVERN ALL QUESTIONS OF WHETHER A CLAIM IS SUBJECT TO ARBITRATION. THIS PROVISION DOES NOT PREVENT EITHER YOU OR SPRINT FROM BRINGING APPROPRIATE CLAIMS IN SMALL CLAIMS COURT . . . .
>
> YOU AND SPRINT FURTHER AGREE THAT NEITHER SPRINT NOR YOU WILL JOIN ANY CLAIM WITH THE CLAIM OF ANY OTHER PERSON OR ENTITY IN A LAWSUIT, ARBITRATION OR OTHER PROCEEDING; THAT NO CLAIM EITHER SPRINT OR YOU HAS AGAINST THE OTHER SHALL BE RESOLVED ON A CLASS-WIDE BASIS; AND THAT NEITHER SPRINT NOR YOU WILL ASSERT A CLAIM IN A REPRESENTATIVE CAPACITY ON BEHALF OF ANYONE ELSE. . . .
> . . . .
> If any portion of this Mandatory Arbitration of Disputes section is determined to be invalid or unenforceable, the remainder of the Section remains in full force and effect.

In January 2007, Sprint again changed its Terms and Conditions.[2]  As with the previous Terms and Conditions, the January 2007 version provided that use of or payment for Sprint service constituted acceptance, and that Sprint could change the Terms and Conditions unilaterally but the customer could terminate his or her contract.  The January 2007 Terms and Conditions contained an expanded "dispute resolution" provision.  According to this provision, all claims not properly triable in small claims court must be arbitrated.  The dispute resolution provision also contained both (1) a class action waiver and (2) a non-severability provision stating that if the class action waiver were held to be unenforceable, the agreement to arbitrate did not apply:

### DISPUTE RESOLUTION

**We Agree To First Contact Each Other With Any Disputes**
We each agree to first contact each other with any disputes and provide a written description of the problem . . . .

**Instead Of Suing In Court, We Each Agree To Arbitrate Disputes**
We each agree to finally settle all disputes (as defined and subject to any specific exceptions below) only by arbitration . . . .

(6) **We each agree not to pursue arbitration on a classwide basis. We each agree that any arbitration will be solely between you and us (not brought on behalf of or together with another individual's claim).  If for any reason any court or arbitrator holds that this**

---

[2]Sprint's December 2006 monthly bill gave advance notice of the change and told Pendergast that the revised Terms and Conditions were available on Sprint's website.

**restriction is unconscionable or unenforceable, then our agreement to arbitrate doesn't apply and the dispute must be brought in court.**

. . . .

**Exceptions To Our Agreement To Arbitrate Disputes**

Either of us may bring a qualifying claim in small claims court. . . .

The January 2007 Terms and Conditions contained a second class action waiver outside and immediately following the dispute resolution provision:

**No Class Actions**

TO THE EXTENT ALLOWED BY LAW, WE EACH WAIVE ANY RIGHT TO PURSUE DISPUTES ON A CLASSWIDE BASIS; THAT IS, TO EITHER JOIN A CLAIM WITH THE CLAIM OF ANY OTHER PERSON OR ENTITY, OR ASSERT A CLAIM IN A REPRESENTATIVE CAPACITY ON BEHALF OF ANYONE ELSE IN ANY LAWSUIT, ARBITRATION OR OTHER PROCEEDING.

In January 2008, Sprint again amended its Terms and Conditions.[3] The January 2008 Terms and Conditions relevant to Pendergast's appeal are not materially different from the January 2007 Terms and Conditions. In particular, the January 2008 Terms and Conditions still contained an arbitration provision, a class action waiver, and a non-severability provision stating that: (1) the parties "agree not to pursue arbitration on a classwide basis"; (2) the parties "agree that any arbitration will be solely between you and us (not brought on behalf of or together with another individual's claim)"; and (3) if the class action waiver were

---

[3]Sprint again provided advance notice of the Terms and Conditions amendment in the preceding month's bill—in this case, the December 2007 bill. The January 2008 Terms and Conditions became effective on January 1, 2008.

held to be unconscionable or unenforceable, "our agreement to arbitrate doesn't apply and the dispute must be brought in court."

Pendergast was a Sprint customer from August 6, 2001 until January 20, 2008, which was after the effective date of the January 2008 Terms and Conditions.

## B.      District Court Proceedings

On February 29, 2008, Pendergast filed the present action in district court. Pendergast's complaint, filed on behalf of a class, alleged Sprint improperly charged its customers roaming fees while they were physically in Sprint's coverage area. Pendergast asserted claims of breach of contract, negligent misrepresentation, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Pendergast estimated his actual individual damages to be about $20.

Sprint moved to compel arbitration pursuant to the FAA and the January 2008 Terms and Conditions. In response, Pendergast argued that the class action waiver was unconscionable and unenforceable under Florida law, and therefore pursuant to the non-severability provision, the arbitration provision did not apply.[4]

---

[4]The parties agreed, and the district court found, that Florida law governed the enforceability of the class action waiver.

9

The district court granted Sprint's motion to compel arbitration and dismissed the case. The district court reasoned that, under Florida law, Pendergast needed to show that the class action was both procedurally and substantively unconscionable to render it unenforceable. Because the district court concluded that the class action waiver was not procedurally unconscionable, it determined that the class action waiver was enforceable without reaching the issue of substantive unconscionability. Pendergast appealed.

## C.    Certification to Florida Supreme Court and Return to this Court

In our previous opinion in this case, we considered whether the class action waiver was unconscionable under Florida law. Pendergast, 592 F.3d at 1133–42. In the course of doing so, we concluded: (1) that the district court correctly determined that Florida unconscionability law required a showing of both procedural and substantive unconscionability for a contractual provision to be held unconscionable; but (2) Florida law was unsettled as to whether courts should "evaluate both prongs simultaneously in a balancing exercise," or whether courts may "stop the analysis after finding either procedural or substantive unconscionability to be independently lacking." Id. at 1134. We therefore certified this question to the Florida Supreme Court. Id. at 1135.

Next, we found it "not clear whether Sprint's contract with [Pendergast] is procedurally unconscionable under Florida law," so we certified that question to the Florida Supreme Court as well. Id. As to substantive unconscionability, we found it "difficult to say in these factual circumstances that no reasonable consumer would have made this agreement or that it is so unfair as to be substantively unconscionable per se." Id. at 1141. But in light of our certification of the preceding questions, we certified the substantive unconscionability question also. Id. at 1142.

Pendergast contended that the changes-to-agreement clause also is substantively unconscionable, arguing that "Florida law does not permit modification of contracts without new consideration and the mutual consent of the parties." Id. at 1142. We pointed out, however, that: (1) Florida law does "permit[] contract modifications if there is consent and a meeting of the minds of the initial contracting parties"; (2) the changes-to-agreement clause was included in the initial terms of Pendergast's 2001 and 2005 contracts with Sprint and was "fully supported by consideration at that time"; (3) Sprint's right to modify the Terms and Conditions were dependent upon Pendergast's agreement by using or paying for Sprint's service; and (4) Pendergast was allowed to cancel his service within 30 days if he did not want to accept the changes. Id. Nevertheless, because

11

the substantive unconscionability of the changes-to-agreement clause "involve[d] the same Terms and Conditions as the other issues, we include[d] it as well in our certification." Id.

Pendergast's final argument was that the class action waiver is void because it frustrates the remedial purposes of the FDUTPA. Although Florida law "arguably" supported Sprint's position that the class action waiver does not frustrate the FDUTPA's remedial purposes, the law was "unsettled." Id. at 1143. Thus, we "[did] not decide the issue of whether Sprint's class action waiver is void for any other reason and include[d] this issue, too, in our certification to the Florida Supreme Court." Id.

> In sum, we certified four questions to the Florida Supreme Court:
>
> (1) Must Florida courts evaluate both procedural and substantive unconscionability simultaneously in a balancing or sliding scale approach, or may courts consider either procedural or substantive unconscionability independently and conclude their analysis if either one is lacking?
> (2) Is the class action waiver provision in Plaintiff's contract with Sprint procedurally unconscionable under Florida law?
> (3) Is the class action waiver provision in Plaintiff's contract with Sprint substantively unconscionable under Florida law? [and]
> (4) Is the class action waiver provision in Plaintiff's contract with Sprint void under Florida law for any other reason?

Id. at 1143–44.

12

As discussed above, after we certified these questions to the Florida Supreme Court, the United States Supreme Court issued its <u>Concepcion</u> decision. In response to Sprint's motion to withdraw certification, we acknowledged that if <u>Concepcion</u> had been decided before our earlier <u>Pendergast</u> decision, we would not have certified questions to the Florida Supreme Court, but we left it up to the Florida Supreme Court whether to answer the certified questions or return the case to us. <u>Pendergast v. Sprint Nextel Corp.</u>, No. 09-10612 (11th Cir. June 17, 2011) (order denying motion to withdraw certification). The Florida Supreme Court chose to return the case, and we now consider the issues in light of <u>Concepcion</u>.

We begin our analysis by discussing the Supreme Court's <u>Concepcion</u> decision. Next we discuss <u>Cruz v. Cingular Wireless, LLC</u>, 648 F.3d 1205 (11th Cir. 2011), our recent decision applying <u>Concepcion</u>. We then apply those decisions to the facts of this case.[5]

## II.  SUPREME COURT'S <u>CONCEPCION</u> DECISION

In <u>Concepcion</u>, the Supreme Court confronted facts similar to those before us now: a putative class action brought by wireless telephone customers, a motion to compel arbitration pursuant to the parties' service agreement, and a contention

---

[5]We review a district court's order compelling arbitration <u>de novo</u>. <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216, 1219 (11th Cir. 2007).

that the agreement's class action waiver was unconscionable. See Concepcion, 131 S. Ct. at 1744–45. The Supreme Court concluded that the FAA preempted California's state law that rendered most collective action waivers in consumer contracts unconscionable. Id. at 1753. Preemption was required because the California law required the availability of classwide arbitration, which "interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." Id. at 1748.

In Concepcion, plaintiffs Vincent and Liza Concepcion entered into a wireless telephone contract with AT&T. The contract "provided for arbitration of all disputes between the parties, but required that claims be brought in the parties' 'individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.'" Id. at 1744. The Concepcions sued AT&T in federal district court, alleging they were charged sales tax on phones advertised to be free. The Concepcions' complaint was consolidated with a putative class action. Id.

AT&T moved to compel arbitration, and the Concepcions argued that the class action waiver in their arbitration agreement was unconscionable under California law. Id. at 1744–45. The district court denied AT&T's motion to compel arbitration, and the Ninth Circuit affirmed, concluding that (1) the class

14

action waiver in the arbitration agreement was unconscionable under California law as announced in <u>Discover Bank v. Superior Court</u>, 113 P.3d 1100 (2005), and (2) the FAA did not preempt California's <u>Discover Bank</u> rule.[6] <u>Concepcion</u>, 131 S. Ct. at 1745. The Supreme Court granted certiorari on the FAA preemption issue and reversed. <u>Id.</u> at 1745, 1753.

Enforcing the arbitration agreement, the Supreme Court observed that the FAA was enacted "in response to widespread judicial hostility to arbitration agreements" and § 2 of the FAA (its primary substantive provision) reflects a "liberal federal policy favoring arbitration." <u>Id.</u> at 1745 (quotation marks omitted).[7] Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." <u>Id.</u> (citation

---

[6]The <u>Discover Bank</u> rule declared class action waivers in arbitration agreements unconscionable, and thus unenforceable, if (1) the waiver is "found in a consumer contract of adhesion," (2) it is foreseeable that disputes between the parties will involve small amounts of damages, and (3) the consumer alleges that the defendant corporation "has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." <u>Concepcion</u>, 131 S. Ct. at 1746 (quoting <u>Discover Bank</u>, 113 P.3d at 1110).

[7]FAA § 2 provides:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2.

15

omitted). The Supreme Court stated, "The question in this case is whether § 2 preempts California's [Discover Bank] rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." Id. at 1746.

The final phrase of the FAA's § 2, known as the "saving clause," "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Id. (emphasis added) (quotation marks and citations omitted).

The Supreme Court noted that when a state law prohibits outright the arbitration of a particular type of claim, the state rule is preempted by the FAA. Id. at 1747. The more difficult issue is "when a doctrine normally thought to be generally applicable, such as . . . unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." Id. In such cases, the FAA can still preempt state law, for "a court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what [] the state legislature cannot." Id. (quotation marks and citation omitted).

In Concepcion, the Supreme Court concluded that the Discover Bank rule was preempted by the FAA because it "interferes with fundamental attributes of arbitration":

> The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.

Id. at 1748 (emphasis added). The Supreme Court reasoned that: (1) the FAA's principal purpose is to ensure the enforcement of private arbitration agreements according to their terms; (2) the Supreme Court previously had held the parties may agree to limit, inter alia, the issues to be arbitrated, the rules under which arbitration would proceed, and with whom they choose to arbitrate; and (3) the reason for allowing parties such discretion is to permit efficient, streamlined procedures. Id. at 1748–49. The Discover Bank rule interferes with arbitration because, although it "does not require classwide arbitration, it allows any party to a consumer contract to demand it ex post." Id. at 1750.

That the switch to class-wide arbitration is a fundamental change, the Concepcion Court stated, is "obvious" because class-wide arbitration "includes absent parties, necessitating additional and different procedures and involving

17

higher stakes," confidentiality is difficult to maintain, and it is hard to find an arbitrator with expertise in class action procedural issues.  Id.

From this, the Supreme Court stated, "[t]he conclusion follows that class arbitration, to the extent it is manufactured by Discover Bank rather than consensual, is inconsistent with the FAA."  Id. at 1750–51.  The Supreme Court explained that: (1) "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment"; (2) "class arbitration requires procedural formality"; (3) "class arbitration greatly increases risks to defendants"; and (4) "[a]rbitration is poorly suited to the higher stakes of class litigation."  Id. at 1751–52.  The Supreme Court added, "We find it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to force such a decision."  Id. at 1752.  The Supreme Court concluded, "It is not reasonably deniable that requiring consumer disputes to be arbitrated on a classwide basis will have a substantial deterrent effect on incentives to arbitrate."  Id. at 1752 n.8.

The Supreme Court acknowledged that parties could mutually agree to classwide arbitration, despite its disadvantages.  "But what the parties . . . would

18

have agreed to is not arbitration as envisioned by the FAA, lacks the benefits, and therefore may not be required by state law." Id. at 1753.[8]  The Supreme Court concluded, "Because it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, California's Discover Bank rule is preempted by the FAA." Id. (quotation marks and citation omitted).

## III.  THIS COURT'S CRUZ DECISION

In Cruz v. Cingular Wireless, LLC, this Court enforced an arbitration agreement and applied Concepcion to facts remarkably similar to those in the present case.  The Cruz plaintiffs were mobile telephone customers of AT&T Mobility, LLC ("ATTM") (formerly Cingular Wireless).  The plaintiffs' service contract with ATTM contained (1) a mandatory arbitration clause, (2) a class action waiver, and (3) a non-severability provision (also called a "blow-up clause") stating that if the class action waiver were "found to be unenforceable, then the entirety of [the] arbitration provision shall be null and void." Cruz, 648 F.3d at 1207.[9]

---

[8]The Supreme Court responded to the dissent's argument that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system." Id. at 1753.  The majority stated that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Id.

[9]The contract also contained a changes-to-agreement clause. Id. at 1207 n.4.  The Court cited and applied the revised version of the arbitration provision, pursuant to the changes-to-agreement clause. Id.

19

The Cruz plaintiffs brought a class action alleging ATTM violated the FDUTPA by charging for a "Roadside Assistance Plan" they never ordered. Id. at 1207–08. ATTM filed a motion to compel arbitration, which the district court granted. The plaintiffs appealed. Id. at 1208.

This Court affirmed, concluding that we did not need to decide whether Florida law would invalidate the class action waiver because even if it did, the law would be preempted by the FAA, per Concepcion. Id. at 1215.

To the extent that Florida public policy voided the ATTM class action waiver because the Cruz plaintiffs' claim "must proceed as a class action or not at all," Concepcion "specifically rejected this public policy argument." Id. at 1212 ("The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." (quoting Concepcion, 131 S. Ct. at 1753)).

This Court rejected the Cruz plaintiffs' argument that Concepcion extends only to state laws that impose non-consensual class-wide arbitration, and thus did not apply in Cruz because the non-severability provision in the ATTM contract ensured that ATTM would not be forced into class arbitration, merely class litigation. Id. at 1213–14. We explained that this argument lacked merit because

20

(1) the non-consensual elimination of arbitration altogether was even more inconsistent with the FAA than the non-consensual requirement of class-wide arbitration; and (2) the parties in Concepcion were not being forced into class arbitration either.  Cruz, 648 F.3d at 1213–14.[10]

The Cruz plaintiffs also argued "that Concepcion only preempts inflexible, categorical state laws that mechanically invalidate class waiver provisions in a generic category of cases" but that Florida law, unlike the Discover Bank rule, "invalidates class action bans only when the individualized facts of the case demonstrate that the ban is functionally exculpatory."  Id. at 1213.  In support, the plaintiffs proffered (1) affidavits from Florida consumer law attorneys stating they would not represent plaintiffs individually in pursuing their claims against ATTM because it would not be cost-effective to do so, and (2) statistics showing only a tiny percentage of ATTM customers have arbitrated a dispute with it.  Id. at 1214.  This Court rejected the plaintiffs' arguments because the plaintiffs' "evidence goes only to substantiating the very public policy arguments that were expressly

_____

[10]We explained, "It would be anomalous indeed if the FAA—which promotes arbitration—were offended by imposing upon arbitration nonconsensual procedures that interfere with arbitration's fundamental attributes, but not offended by the nonconsensual elimination of arbitration altogether."  648 F.3d at 1213 (citation omitted).  We pointed out that the Concepcions "faced no [more] risk of being forced into class arbitration" than the Cruz plaintiffs, because (1) "nonconsensual class arbitration was already prohibited" by Supreme Court precedent, and (2) "the arbitration agreement in Concepcion contained the very same blow-up clause that is present here."  Id. at 1213–14.

rejected by the Supreme Court in Concepcion—namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted." Id.

Thus, this Court concluded that, given Concepcion, "our resolution of this case does not depend on a construction of Florida law." Id. at 1215. Rather, "[t]o the extent that Florida law would require the availability of classwide arbitration procedures in this case" because "the case involves numerous small-dollar claims by consumers against a corporation, . . . such a state rule is inconsistent with and thus preempted by FAA § 2." Id.

## IV. ANALYSIS

Resolution of Pendergast's appeal requires only a straightforward application of Concepcion and Cruz. We need not decide whether the class action waiver here is unconscionable under Florida law or if it frustrates the remedial purposes of the FDUTPA, because to the extent Florida law would invalidate the class action waiver, it would still be preempted by the FAA.[11]

---

[11]We also conclude that, for the reasons set forth in our previous decision, Pendergast's challenge to the enforceability of the changes-to-agreement clause fails. See Pendergast, 592 F.3d at 1142. The changes-to-agreement clause was supported by consideration and consent, and it is not substantively unconscionable. Thus, the January 2008 version of the parties' agreement—which included an arbitration clause, a class action waiver, and a non-severability provision—controls.

22

Pendergast's rationales for invalidity of the class action waiver under Florida unconscionability doctrine and the FDUTPA are essentially the same. Pendergast contends the class action waiver precludes him and other Sprint customers from obtaining meaningful relief because their claims cannot, as a practical matter, be pursued individually.

In other words, Pendergast argues, as did the Concepcions, "that the arbitration agreement [is] unconscionable and unlawfully exculpatory under [state] law because it disallow[s] classwide procedures." Concepcion, 131 S. Ct. at 1745. If Florida law were to invalidate the class action on that basis, then for the same reasons the Supreme Court enunciated in Concepcion, that state law would impose procedures fundamentally incompatible with the arbitration the parties agreed upon, would thus stand as an obstacle to the accomplishment of the FAA's objectives, and would be preempted. See id. at 1746–53; see also Cruz, 648 F.3d at 1212–13 ("[T]o the extent that Florida law would be sympathetic to the Plaintiffs' arguments here, and would invalidate the class waiver simply because the claims are of small value, the potential claims are numerous, and many consumers might not know about or pursue their potential claims absent class procedures, such a state policy stands as an obstacle to the FAA's objective of enforcing arbitration agreements according to their terms, and is preempted.").

Pendergast also argues that Concepcion merely held that a state's generally applicable contract defenses cannot be used to force defendants into an arbitration procedure inconsistent with the FAA, and here Sprint will never be forced into class arbitration because of the non-severability provision. We, however, rejected this same argument in Cruz. If anything, the non-severability clause makes the case for FAA preemption even stronger here than in Concepcion. As we held in Cruz in regard to a nearly identical non-severability provision, if a state rule invalidating class action waivers in arbitration agreements (thereby requiring class-wide arbitration instead of bilateral arbitration) serves as an obstacle to the FAA's objective of enforcing arbitration agreements according to their terms, then a state rule invalidating a class action waiver and thereby forcing the parties out of arbitration entirely frustrates the FAA's purpose even more. See Cruz, 648 F.3d at 1213 ("It would be anomalous indeed if the FAA—which promotes arbitration—were offended by imposing upon arbitration nonconsensual procedures that interfere with arbitration's fundamental attributes, but not offended by the nonconsensual elimination of arbitration altogether."). The fact that the state rule forces the parties out of arbitration because of their contractually-expressed fallback position of preferring class litigation to class arbitration does not make the state rule any more consistent with the FAA.

24

Pendergast also argues that in Concepcion, the Supreme Court noted that the plaintiffs could vindicate their rights without the class action mechanism, but here the undisputed record evidence shows that Pendergast will not be able to vindicate his rights without a class action. Again, we disposed of a similar argument in Cruz. We acknowledged that the plaintiffs in Cruz "presented a factual record not present in Concepcion," including affidavits from Florida consumer law attorneys stating it would not be cost-effective to pursue the plaintiffs' claims against ATTM except on a class-wide basis and statistical evidence about the number of ATTM customers who arbitrated claims against it.[12] 648 F.3d at 1214. However, we rejected the plaintiffs' argument because their evidence only tended "to substantiat[e] the very public policy arguments that were expressly rejected by the Supreme Court in Concepcion":

> [On] the facts of this case, we believe that faithful adherence to Concepcion requires the rejection of the Plaintiffs' argument. The Plaintiffs' evidence goes only to substantiating the very public policy arguments that were expressly rejected by the Supreme Court in Concepcion—namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted. The Court observed that California's Discover Bank rule too had "its origins in California's unconscionability doctrine and California's policy against exculpation." Concepcion, 131 S.Ct. at 1746. Indeed, the Concepcion consumer-plaintiffs' brief to the Supreme Court repeatedly emphasized that California's rule was a "fact-specific"

---

[12]Pendergast submits similar evidence in this case.

inquiry that only screened out class action bans "in circumstances where they would . . . be exculpatory."

Id. at 1214 (citations omitted).

The reasoning of Cruz applies equally here. The Supreme Court in Concepcion expressly rejected the notion that the state law should not be preempted because the class action waiver would effectively shield the defendant from liability. See Concepcion, 131 S. Ct. at 1753 ("The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for other reasons." (citation omitted)). Pendergast's attempts to distinguish Concepcion are unavailing.[13]

For the reasons set forth above, we conclude that we need not reach the questions of whether Florida law would invalidate the class action waiver in the parties' contract because, to the extent it does, it would be preempted by the FAA. Under Concepcion, both the class action waiver and the arbitration clause must be enforced according to their terms.

## V.  CONCLUSION

---

[13]We reject as meritless Pendergast's remaining arguments that Sprint waived a federal preemption argument and that the contract's designation of the now-defunct National Arbitration Forum as the arbitral forum was an integral component of the arbitration clause.

We affirm the district court's order dismissing Pendergast's complaint and compelling arbitration.

**AFFIRMED.**