885 So.2d 900 (2004)
GILMAN + CIOCIA, INC., Appellant,
v.
Virginia M. WETHERALD, Appellee.
No. 4D03-3821.
District Court of Appeal of Florida, Fourth District.
September 22, 2004.
Rehearing Denied November 22, 2004.
*901 James M. Kaplan and Dena E. Feldman of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Miami, for appellant.
Janet Carney Croom of Clem, Polackwich, Vocelle & Berg, L.L.P., Vero Beach, for appellee.
EMAS, KEVIN M., Associate Judge.
Appellant, Gilman + Ciocia, Inc. ("Gilman + Ciocia"), appeals the trial court's non-final order denying its motion to compel *902 arbitration and to stay proceedings pending arbitration. We have jurisdiction. See Fla. R.App. P. 9.130(a)(3)(C)(iv).
The issues are whether the Federal Arbitration Act (9 U.S.C. §§ 1-14) applies to the employment agreement in this case and, if so, whether the trial court erred in denying Gilman + Ciocia's motion to stay proceedings and to compel arbitration.
Gilman + Ciocia is a corporation providing tax, accounting and financial services with its principal place of business in New York. Virginia Wetherald ("Wetherald") is a certified public accountant and insurance agent who holds a securities broker's license and who lives and works in Florida.
This dispute arose out of an employment agreement and asset purchase agreement entered into between the parties. Pursuant to the agreements, Wetherald sold her assets to Gilman + Ciocia and became an employee of the company, providing accounting, insurance and broker services on behalf of Gilman + Ciocia.
Thereafter, Wetherald filed a civil action, alleging breach of contract, misrepresentation, fraud in the inducement, and quantum meruit. Gilman + Ciocia filed a motion to compel arbitration and to stay action pending arbitration, based upon two clauses of the employment agreement. The first provided:
All matters concerning the validity and interpretation of and performance under this Agreement shall be governed by the laws of the State of New York, without giving effect to its conflict of laws provisions.
The second clause provided:
Any controversy or claim arising out of or related to this Agreement or any breach of this Agreement, including claims of employment or other discrimination by the Employee against the Company, shall be commenced, prosecuted and resolved in New York, New York by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect, and judgment upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, if the Company elects to enforce its rights under Section 7 of the Agreement, the Company may commence an action in any court located in New York, New York, and the Employee hereby irrevocably consents to the jurisdiction and venue of such court.
The trial court entered an order denying Gilman + Ciocia's motion, finding that the arbitration clause was voidable and that Gilman + Ciocia failed to establish that the employment agreement involved interstate commerce. We reverse.

CHOICE OF LAW
Preliminarily, we must determine the validity of the clause in the contract (set forth above), which unambiguously requires arbitration by application of New York law. Florida courts are obligated to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust. See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So.2d 306 (Fla.2000); Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So.2d 627 (Fla. 1st DCA 1999). No such showing was made, and the choice-of-law provision in the contract is valid and enforceable.

ENFORCEABILITY OF THE ARBITRATION CLAUSE UNDER FLORIDA LAW
Because the employment agreement requires arbitration in New York under New York law, is the agreement still *903 enforceable in Florida courts? In briefing this issue, the parties concur that the Florida Arbitration Code, chapter 682, Florida Statutes, does not apply to the employment agreement. As a general proposition, an otherwise valid arbitration agreement is voidable at the election of either party, making it unenforceable under the Florida Arbitration Code, if it incorporates an agreement to arbitrate under the laws of another state. See Damora v. Stresscon Int'l, Inc., 324 So.2d 80 (Fla.1975); Butcher & Singer, Inc. v. Frisch, 433 So.2d 1360 (Fla. 4th DCA 1983); Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed, 405 So.2d 790 (Fla. 4th DCA 1981).
The trial court was correct in finding the arbitration agreement voidable at the election of either party and therefore unenforceable under Florida law. However, there is an exception to this general rule: Even if the arbitration clause is voidable under Florida law, it may still be enforceable by Florida courts under applicable Federal law.

ENFORCEABILITY OF THE ARBITRATION CLAUSE UNDER THE FEDERAL ARBITRATION ACT
Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, in response to perceived hostility of American courts to the enforcement of arbitration agreements. In enacting the FAA, Congress declared a national policy favoring arbitration, preempting those states which required a judicial forum for resolving claims which the contracting parties agreed to resolve by arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).
Under the supremacy clause of the United States Constitution, the FAA supersedes any inconsistent state law, and Florida courts are obligated to enforce valid arbitration agreements within the scope of the FAA, even if such agreements would otherwise be unenforceable under Florida law. See Butcher & Singer, 433 So.2d at 1361-62; Merrill Lynch, 405 So.2d at 792; see also Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).
The FAA provides in pertinent part:
A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C.A. § 2. (emphasis supplied). A transaction involving commerce under the FAA refers to interstate commerce. See 9 U.S.C.A. § 1. Thus, the remaining questions are whether the FAA applies to employment agreements in general and to this employment agreement in particular.
The first issue has been answered by the United States Supreme Court in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). In Circuit City, Adams applied for a job as a sales counselor at an electronics retail store. The employment contract required that all employment disputes be settled by arbitration. After his hiring, Adams filed an employment discrimination action in state court. Circuit City filed for injunctive relief in federal court, seeking an order compelling arbitration.
Adams contended that the employment contract was not subject to arbitration under the FAA for two reasons: first, the FAA applies to "a contract evidencing a transaction involving commerce." 9 *904 U.S.C.A. § 2 (emphasis supplied). The word "transaction," Adams argued, limited the FAA to commercial contracts, and therefore excluded all employment agreements. Second, he argued that 9 U.S.C. § 1 specifically exempts employment contracts from arbitration under the FAA.
The Supreme Court rejected both arguments, finding that Congress' use of the word "transaction" did not evidence an intent to limit the scope of the Act to commercial ventures, or to exclude employment contracts from its reach. The Court reaffirmed its prior decisions broadly interpreting § 2 of the FAA "as implementing Congress' intent `to exercise [its] commerce power to the full.'" Circuit City Stores, 532 U.S. at 112, 121 S.Ct. 1302 (quoting Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). To construe § 2 in the manner urged by Adams would render superfluous the exemption in § 1, which excludes particular types of employment contracts from the scope of the FAA.
The Court noted that § 1 of the FAA specifically exempts" `contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" Id. (quoting 9 U.S.C. § 1). If § 2 was to be read as applying only to commercial transactions, and therefore inapplicable to employment contracts, the exemptions in § 1 would be unnecessary. The Court found that Adams' proposed reading of § 2 cannot be reconciled with the broad reading given by the Court in Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834 (1995), and prior cases construing the expansive reach of the FAA. See, e.g., Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).
Addressing Adams' second argument, the Court held that the exemption provided in § 1 was limited to the types of workers enumerated in the provision (transportation workers), and was further limited to transportation workers engaged in the actual movement of goods in interstate commerce. The Court concluded by holding that, but for that limited class of workers, arbitration agreements in employment contracts are enforceable under the Federal Arbitration Act and supersede conflicting state law.
It is therefore plain that employment agreements such as the one in this case are subject to the provisions of the FAA and enforceable in Florida courts. It is also evident that the employment agreement in this case in fact involves interstate commerce for purposes of the FAA.[1] The agreement provides, for example, that:
1. Wetherald, a Florida resident, agreed to provide services to Gilman + Ciocia, a company whose place of business is in New York, for a minimum of five years.
2. Wetherald agreed to provide such services as buying and selling securities and other investment or financial products.
3. Wetherald was required to maintain her securities or other licenses and keep them in good standing, including Series 6, Series 7, and Series 24 licenses, and agreed to submit an application for securities industry registration with the National Association of Securities Dealers.
*905 4. Under the terms of the agreement, Wetherald and Gilman + Ciocia would, on a regular basis, share data, exchange correspondence, and transfer funds between Florida and New York.
5. Wetherald was permitted to participate in Gilman + Cioccia's employee stock option plan, stock purchase plan, and 401K plan. (The employment agreement indicated that Gilman + Ciocia is publicly traded on the NASDAQ Exchange under the symbol "GTAX".).
6. Wetherald agreed to comply with all laws and rules governing insider trading of company stock.
7. Wetherald agreed that her work for Gilman + Ciocia was subject to federal and state law, and subject to the rules and regulations of all applicable regulatory agencies.
This list, while not exhaustive, illustrates that the employment agreement is "a contract evidencing a transaction in commerce" under the FAA. See, e.g., Coastal Health Care Group, Inc. v. Schlosser, 673 So.2d 62 (Fla. 4th DCA 1996); Butcher & Singer v. Frisch, 433 So.2d 1360 (Fla. 4th DCA 1983); Victor v. Dean Witter Reynolds, Inc., 606 So.2d 681 (Fla. 5th DCA 1992); ESAB Automation, Inc. v. Hesco Sales, Inc., 582 So.2d 810 (Fla. 3d DCA 1991); Donmoor, Inc. v. Sturtevant, 449 So.2d 869 (Fla. 5th DCA 1984). See also Allied-Bruce Terminix Cos., 513 U.S. at 277, 115 S.Ct. 834. In construing whether an arbitration agreement comes within the scope of the FAA, due regard must be given to the federal policy favoring arbitration, and any doubts should be resolved in favor of arbitration. See Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
We quash the order denying Appellant's motion to compel arbitration and to stay proceedings pending arbitration, and remand for further proceedings consistent with this opinion.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] The proper test for determining whether an agreement involves interstate commerce is not whether the parties contemplated engaging in activity which involves interstate commerce, but whether there is in fact activity which involves "interstate commerce" as that phrase has been interpreted. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834 (1995).