PARIENTE, J.
The issue raised by the decision of the Fourth District Court of Appeal in McKenzie v. Betts, 55 So.3d 615 (Fla. 4th DCA 2011), is whether the class action waiver in the arbitration agreement in this case violates Florida public policy.[1] After the Fourth District decided this case, concluding that the class action waiver violated public policy, and certified a question to be of great public importance to this Court,[2] the United States Supreme Court *1178 issued its decision in AT & T Mobility, LLC v. Concepcion, — U.S. -, 131 S.Ct. 1740, 1744, 179 L.Ed.2d 742 (2011), addressing the issue of whether the Federal Arbitration Act (FAA) “prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures.” The Supreme Court concluded that the California Discover Bank rule,[3] which it characterized as “classifying most collective-arbitration waivers in consumer contracts as unconscionable,” was preempted by the FAA. Id. at 1746.
Applying the rationale of Concepcion to the facts set forth by the Fourth District in McKenzie, we conclude that the FAA preempts invalidating the class action waiver in this case on the basis of it being void as against public policy. Accordingly, we quash the Fourth District’s decision below. We decline to answer the certified question because it is moot in light of Concepcion. In other words, even if the Fourth District is correct that the class action waiver in this case is void under state public policy, this Court is without authority to invalidate the class action waiver on that basis because federal law and the authoritative decision of the United States Supreme Court in Concepcion preclude us from doing so.[4]
FACTS AND BACKGROUND
In 2001, plaintiffs Wendy Betts and Donna Reuter filed a class action complaint in circuit court against McKenzie Check Advance, LLC, d/b/a National Cash Advance (MCA), as well as Brenda and Steve McKenzie as the majority owners and managing officers of MCA. The plaintiffs asserted claims based on the Florida lending practices statute (chapter 687), Florida Consumer Finance Act (chapter 516), Florida Deceptive and Unfair Trade Practices Act (chapter 501) (FDUTPA), and the Florida Civil Remedies for Criminal Practices Act (chapter 772) (FCRCPA). The crux of the plaintiffs’ claims was that MCA, under the deceptive guise of a check cashing service, was in reality loaning money at usurious and exorbitant rates.
The issue involved in this case arose when, in 2007, the plaintiffs amended the class action complaint to add Tiffany Kelly as an additional plaintiff and named class member. Because Kelly had signed the version of MCA’s arbitration agreement that contained a class action waiver, this case focuses on her contracts with MCA, *1179 and not on the contracts signed by Betts or Reuter.
The Fourth District set forth the following facts with respect to Kelly:
This new plaintiff was Tiffany Kelly; her contracts with [MCA] included an arbitration agreement with a class action waiver. [MCA] moved to stay the proceedings and compel arbitration. The plaintiffs objected to arbitration, claiming the class action waiver was unconscionable, violated public policy, or both. The challenge to the arbitration agreement necessitated an evidentiary hearing.
At the hearing, Kelly testified she was a 24-year-old single mother with a year of college education. Money was tight— she had been turned down for public assistance and her bank would not give her a loan. A co-worker told her about [MCA]. Though embarrassed, she needed money so desperately that she went to a[MCA] store to obtain a cash advance on her paycheck. She described this first transaction with [MCA], [MCA] gave her documents to review and initial. While she did not read the documents thoroughly, Kelly admitted that no one discouraged her from doing so. She was, however, anxious to receive the advance, and she knew she had to sign the documents to receive it.
[[Image here]]
Kelly signed the contract, gave [MCA] a $338 check in exchange for $300 cash, and left. She understood she would have to redeem the check within ten days or [MCA] could present it for payment. During the putative class period, Kelly ultimately engaged in twenty-one more payday loans with [MCA]. She paid a total of $860 in fees. When she entered into the transactions, Kelly testified she assumed they were legal: “If it was against the law, [the defendants] wouldn’t be allowed to operate. At least that’s what I would assume.”
McKenzie, 55 So.3d at 618-19 (alteration in original). Each transaction between MCA and Kelly was memorialized by a written contract that contained an arbitration clause and a class action waiver. The arbitration clause explicitly stated that the arbitrator shall not conduct class arbitration. The agreement further provided: “If any of this WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT is held invalid, the remainder shall remain in effect.” The parties stipulated, however, that if the class action waivers were held to be unenforceable, the arbitration provisions would be stricken.
The parties presented evidence at an evidentiary hearing on whether the class action waivers left MCA’s customers “without a viable means of seeking redress .... Kelly presented the expert testimony of three Florida attorneys. The three testified that, absent the class action mechanism, Florida customers who wanted to challenge the practice of payday advance businesses would not be able to obtain competent legal representation.” Id. at 619. The attorneys further testified that it was virtually impossible for an individual consumer to find a competent attorney for a payday loan case because of the complex nature of such cases and the small amount of potential recovery. See id. at 619-20.
Following the hearing, the trial court denied MCA’s motion to compel arbitration. In its order, the trial court found that the greater weight of the evidence “supported] the proposition that it would have been virtually impossible for Kelly to obtain competent individual representation for the claims brought here, particularly in 2000.” The trial court ruled that the class action waiver was unenforceable because it was void as against public policy. Specifi- *1180 eally, the trial court determined that “enforcement of the class ban would deprive Kelly and similarly situated consumers of any remedy” and “would defeat the implicated statutes’ remedial purposes and undercut them deterrent value.”
On appeal, MCA argued that its class action waiver would not defeat the remedial purposes of the statutes upon which the plaintiffs sued, including FDUTPA and FCRCPA. Id. at 621. The Fourth District disagreed, stating that “[c]ompetent, substantial evidence supported] the trial court’s finding that no other reasonable avenue for relief would be available if it enforced the class action waiver.” Id. at 623. The Fourth District recognized that the contract “preserved [Kelly’s] substantive rights,” id. at 619, but reasoned that the class action waiver violated the public policy of FDUTPA and FCRCPA because the inability to bring a class action suit against MCA would “eviscerate the remedial purposes of the relied-upon statutes. Only with the availability of class representation would consumers’ rights in these payday loan transactions be vindicated.” Id. at 623. The Fourth District concluded that “[bjecause payday loan cases are complex, time-consuming, involve small amounts, and do not guarantee adequate awards of attorney’s fees, individual plaintiffs cannot obtain competent counsel without the procedural vehicle of a class action. The class action waiver prevents consumers from vindicating their statutory rights, and thus violates public policy.” Id. at 629. Stating that “these class action waivers frequently involve transactions amenable to suit under remedial statutes like FDUTPA, and such waivers are used more and more,” the Fourth District certified to this Court the question of whether a class action waiver in an arbitration agreement violates public policy when the trial court is persuaded that the waiver prevents consumers from obtaining competent counsel. Id.
ANALYSIS
MCA argues that in light of AT & T Mobility, LLC v. Concepcion, — U.S. -, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), which was issued after the Fourth District’s decision below, the FAA preempts .state laws invalidating arbitration agreements that require arbitration on an individual basis, thus requiring enforcement of the class action waiver in this case. Kelly responds that Concepcion does not apply to this case and, even if it did, it does not require enforcement of a class action waiver when, as here, an extensive factual record demonstrates that the plaintiffs would be unable to obtain competent counsel absent class action. Therefore, Kelly argues, enforcing the ban would prevent plaintiffs from vindicating their statutory rights.
The issue of whether under Concepcion the FAA would preempt the application of the void as against public policy contract defense in this case is a pure question of law, and this Court’s review is de novo. See Bosem v. Musa Holdings, Inc., 46 So.3d 42, 44 (Fla.2010) (“Because this is a pure question of law, our standard of review is de novo.”). We begin our analysis by reviewing the FAA and Concepcion. Then we apply Concepcion to this case. We also address, and reject, each of Kelly’s arguments that Concepcion does not apply here. We conclude that in light of Concepcion, the class action waiver in this case is enforceable. Accordingly, we do not reach the certified question because it is moot.
I. The Federal Arbitration Act
The United States Supreme Court has consistently explained that the FAA, which was enacted in 1925 as a response to judicial hostility to arbitration, establishes *1181 a liberal federal policy favoring arbitration agreements. See CompuCredit Corp. v. Greenwood, — U.S. -, 132 S.Ct. 665, 668-69, 181 L.Ed.2d 586 (2012); Concepcion, 131 S.Ct. at 1745; Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Section 2 of the FAA, referred to as the “primary substantive provision of the Act,” Concepcion, 131 S.Ct. at 1745 (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)), provides in relevant part:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2 (emphasis added). The United States Supreme Court has “described this provision as reflecting both a ‘liberal federal policy favoring arbitration,’ and the ‘fundamental principle that arbitration is a matter of contract.’ ” Concepcion, 131 S.Ct. at 1745 (citations omitted). Accordingly, “courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.” Id. (citations omitted). The final phrase of § 2, referred to as the savings clause, however, permits arbitration agreements to be declared unenforceable based on “‘generally applicable contract defenses, such as fraud, duress, or unconsciona-bility,’ but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.” Id. at 1746.
II. AT & T Mobility, LLC v. Concepcion
In Concepcion, the question before the United States Supreme Court was “whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures.” Id. at 1744. Specifically, the Supreme Court considered whether the FAA preempts California’s Discover Bank rule, which “classified] most collective-arbitration waivers in consumer contracts as unconscionable.” Id. at 1746.
In Concepcion, the plaintiffs entered into an agreement with AT & T for the sale and servicing of cellular telephones, which provided for arbitration of all disputes and contained a class action waiver. Id. at 1744. The plaintiffs later brought suit against AT & T in federal district court alleging, among other things, that AT & T had engaged in false advertising and fraud by charging sales tax on phones it had advertised as free. Id. AT & T moved to compel arbitration, which the plaintiffs opposed by arguing that the arbitration agreement was unconscionable and unlawfully exculpatory under California law because it disallowed class action proceedings. Id. at 1744-45. The federal district court denied AT & T’s motion, relying on the California Supreme Court’s decision in Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), to find the arbitration provision unconscionable. Concepcion, 131 S.Ct. at 1745. Under the Discover Bank rule, a class action waiver in a consumer contract of adhesion is unenforceable “in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money” because “the waiver becomes in practice the exemption of the *1182 party ‘from responsibility for [its] own fraud, or willful injury to the person or property of another.’ ” Id. at 1746 (quoting Discover Bank, 30 Cal.Rptr.3d 76, 113 P.3d at 1110). The Ninth Circuit affirmed, also finding the provision to be unconscionable under the Discover Bank rule. Id. at 1745.
The United States Supreme Court granted certiorari review on the issue of FAA preemption. The plaintiffs argued that the Discover Bank rule, given its origins in California’s unconscionability doctrine and California’s policy against exculpation, is a ground that “exist[s] at law or in equity for the revocation of any contract” under § 2 of the FAA. Id. at 1746. They further argued that even if the Supreme Court construed the Discover Bank rule as a prohibition on collective-action waivers rather than an application of un-conscionability, the rule would still be applicable to all contracts, since California prohibits waivers of class litigation as well. Id.
The Supreme Court noted that when “a state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward — the conflicting rule is displaced by the FAA.” Id. at 1747. However, the analysis becomes “more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration.” Id. In such situations, a court may not “rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable.” Id. (quoting Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). The Supreme Court reasoned that “[a]l-though § 2’s saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA’s objectives.” Id. at 1748. With respect to class arbitration, the Supreme Court held that
[t]he overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of elasswide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.

Id.

The Supreme Court concluded that California’s Discover Bank rule interferes with the fundamental attributes of arbitration because “[although the rule does not require classwide arbitration, it allows any party to a consumer contract to demand it ex post.” Id. at 1750. The Supreme Court recognized that the Discover Bank rule was limited to adhesion contracts, but observed that “the times in which consumer contracts were anything other than adhesive are long past.” Id. The Supreme Court further reasoned that the other limitations in the Discover Bank rule also had no limiting effect on the application of the rule:
The rule also requires that damages be predictably small, and that the consumer allege a scheme to cheat consumers. The former requirement, however, is toothless and malleable (the Ninth Circuit has held that damages of $4,000 are sufficiently small, see Oestreicher v. Alienware Corp., 322 Fed.Appx. 489, 492 ([9th Cir.]2009) (unpublished)), and the latter has no limiting effect, as all that is required is an allegation. Consumers remain free to bring and resolve their disputes on a bilateral basis under Discover Bank, and some may well do so; but there is little incentive for lawyers to arbitrate on behalf of individuals *1183 when they may do so for a class and reap far higher fees in the process. And faced with inevitable class arbitration, companies would have less incentive to continue resolving potentially duplicative claims on an individual basis.
Id. (citation omitted). The Supreme Court detailed the disadvantages of class-wide arbitration and concluded that to the extent it is manufactured by the Discover Bank rule rather than consensually agreed upon by the parties, class arbitration is inconsistent with the FAA. Id. at 1750-51.
In response to the dissent’s assertion that “class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system,” the Supreme Court stated that “States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” Id. at 1753. The Supreme Court concluded that because the Discover Bank rule stands as an obstacle to the FAA’s purposes, it was preempted. Id.
III. Applying Concepcion to This Case
Under Florida law, a contractual provision that defeats the purpose of a remedial statute violates public policy and is thus unenforceable. Lacey v. Healthcare & Ret. Corp. of Am., 918 So.2d 333, 334 (Fla. 4th DCA 2005); see also Shotts v. OP Winter Haven, Inc., 86 So.3d 456, 474 (Fla.2011); Gessa v. Manor Care of Fla., Inc., 86 So.3d 484, 492-93 (Fla.2011). In this case, Kelly has argued, and the Fourth District has held, that MCA’s class action waiver violates public policy because consumers would be unable to obtain competent counsel if the small-value claims, such as those in this case, could not be brought in a class action proceeding, and that this result would prevent a consumer from vindicating the rights that FDUTPA and FCRCPA are designed to create and nurture. McKenzie, 55 So.3d at 617, 623.
We do not reach the merits of this argument, because to the extent that Florida law would invalidate the class action waiver on this basis, the FAA preempts Florida law under the facts presented here.[5] The United States Court of Appeals for the Eleventh Circuit recently reached the same result in a case where the plaintiffs argued that a class action waiver in an arbitration agreement was *1184 unenforceable because it would exculpate a corporation from liability under state law and therefore defeat the remedial purpose of FDUTPA in violation of public policy. See Cruz v. Cingular Wireless, LLC, 648 F.3d 1205, 1212 (11th Cir.2011). We conclude that the Eleventh Circuit’s reasoning in Cruz is persuasive and applicable in this case.
In Cruz, the plaintiffs contended that the vast majority of the numerous, small-value claims against the defendant corporation would “go unprosecuted unless they may be brought as a class.” Id. This argument was based on evidence presented that attorneys would refuse to represent consumers for the “legally complex but small-value claims unless they can be aggregated” and that absent class action notice procedures, the vast majority of consumers would never know that their rights have been violated. Id. The Eleventh Circuit held that invalidating the class action waiver on that basis would be preempted by the FAA:
[T]he Concepcion Court specifically rejected this public policy argument, which was expressly made by the dissent in that case: “The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” Concepcion, 131 S.Ct. at 1753 (citation omitted). Thus, in light of Concepcion, state rules mandating the availability of class arbitration based on generalizable characteristics of consumer protection claims — including that the claims “predictably involve small amounts of damages,” id. at 1746 (quoting Discover Bank, 30 Cal.Rptr.3d 76, 113 P.3d at 1110), that the company’s deceptive practices may be replicated across “large numbers of consumers,” id. (quoting Discover Bank, 30 Cal.Rptr.3d 76, 113 P.3d at 1110), and that many potential claims may go unprosecuted unless they may be brought as a class, id. at 1753 — are preempted by the FAA, even if they may be “desirable,” id. Therefore, to the extent that Florida law would be sympathetic to the Plaintiffs’ arguments here, and would invalidate the class waiver simply because the claims are of small value, the potential claims are numerous, and many consumers might not know about or pursue their potential claims absent class procedures, such a state policy stands as an obstacle to the FAA’s objective of enforcing arbitration agreements according to their terms, and is preempted.
Id. at 1212-13. We conclude that this reasoning also applies to the facts and arguments presented in this case. None of Kelly’s arguments to the contrary are availing.
Kelly initially contends that Concepcion does not apply to actions brought in state court because, since 1995, Justice Thomas has consistently stated that the FAA in general, and § 2 in particular, does not apply in state courts.[6] Thus, Kelly asserts, had Concepcion reached the United States Supreme Court from a state court, *1185 there could not have been five votes for preemption. We reject this speculative argument. Concepcion does not make the distinction asserted by Kelly, nor does Justice Thomas in his concurrence in Concepcion. Simply put, nothing in the reasoning of Concepcion limits the application of Concepcion to cases arising in federal court, and the Supreme Court has held that the FAA applies in both federal and state courts. See, e.g., Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
Kelly’s primary argument for why Concepcion does not apply in this case is based on her assertion that Concepcion does not disturb long-standing Supreme Court precedent dating back to Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), that statutory claims are arbitrable only if the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum. See Mitsubishi Motors, 473 U.S. at 637, 105 S.Ct. 3346 (stating that “so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function”); Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (stating that “even claims arising under a statute designed to further important social policies may be arbitrated because ‘so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,’ the statute serves its functions” (quoting Mitsubishi Motors, 473 U.S. at 637, 105 S.Ct. 3346)); see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); EEOC v. Waffle House, Inc., 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Kelly asserts that because Concepcion did not overrule this line of precedent, the only way to harmonize Concepcion with these cases is to hold that a class action waiver cannot be enforced if it would prevent parties from vindicating statutory rights.
The case law, however, does not support Kelly’s argument. The Supreme Court cases cited by Kelly involved the FAA and claims brought under federal statutes, whereas Concepcion involved the issue of whether state law was preempted by the FAA. Compare Mitsubishi Motors, 473 U.S. at 627-28, 105 S.Ct. 3346 (“Just as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.... We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history. Having made the bargain to arbitrate, the party should be held to it unless Congress itself .has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.” (citation omitted)); Green Tree Fin. Corp.-Ala., 531 U.S. at 90, 121 S.Ct. 513 (“[W]e first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.”); with Concepcion, 131 S.Ct. at 1744 (‘We consider whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures.”); id. at 1753 (“States cannot require a procedure that is inconsistent with *1186 the FAA, even if it is desirable for unrelated reasons.”).
Federal courts considering whether to compel arbitration of a federal claim have distinguished Concepcion on this basis. See, e.g., In re Am. Exp. Merchants’Litig., 667 F.3d 204, 213 (2d Cir.2012) (stating in a federal antitrust case that “Concepcion plainly offers a path for analyzing whether a state contract law is preempted by the FAA. Here, however, our holding rests squarely on ‘a vindication of statutory rights analysis, which is part of the federal substantive law of arbitrability ”); Chen-Oster v. Goldman, Sachs & Co., 2011 WL 2671813, at *3 (S.D.N.Y. July 7, 2011) (explaining that the consideration when the FAA and a federal statute are involved is “whether the FAA’s objectives are also paramount when ... rights created by a competing federal statute are infringed by an agreement to arbitrate” (emphasis added)). Because Mitsubishi Motors and its progeny addressed federal statutory claims and the effectuation of Congress’s intent in those federal statutes, there was no need for the Supreme Court in Concepcion to overrule the Mitsubishi Motors line of cases. We reject the suggestion that the fact that the Supreme Court did not recede from those cases in Concepcion is indicative of an unstated intent to create an exception to Concepcion when the parties are unable to vindicate rights under a state statute. See Coneff v. AT & T Corp., 673 F.3d 1155, 1158 & n. 2 (9th Cir.2012) (stating that “Mitsubishi [Motors], Gil-mer, Green Tree and similar decisions are limited to federal statutory rights” and rejecting the argument that the tension between the Mitsubishi Motors line of cases and Concepcion “must be resolved by reading an implied exception into Concepcion ” (emphasis added)).
We also reject Kelly’s reliance on a federal appellate court case decided prior to Concepcion, which she cites as standing for the proposition that the vindication-of-statutory-rights analysis applies in the state statutory context. See Booker v. Robert Half Int’l, Inc., 413 F.3d 77 (D.C.Cir.2005). The reasoning employed in Mitsubishi Motors and its progeny, as well as the weight of persuasive case law,[7] are contrary to Kelly’s position. Moreover, creating such an exception would appear to be contrary to the rationale of Concepcion, which made it clear that the focus of the inquiry was whether the state rule would frustrate the purposes of the FAA. See Concepcion, 131 S.Ct. at 1753 (“The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot re *1187 quire a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” (emphasis added) (citation omitted)).
Kelly also argues that Concepcion was concerned only with mechanical state rules that would invalidate class action waivers regardless of whether the particular facts of a case demonstrate that the parties could effectively vindicate their rights in arbitration. She further argues that the record evidence in this case, including the expert testimony of three attorneys, demonstrates that she will be unable to obtain competent counsel absent class action and therefore will be unable to vindicate her statutory rights. The Eleventh Circuit recently considered similar factual evidence in Cruz, 648 F.3d at 1214, in which the plaintiffs presented a “factual record not present in Concepcion — the affidavits of three Florida consumer law attorneys who attested that they would not represent consumers on an individual basis” in pursuing their claims against the defendant. All three Florida consumer law attorneys “examined both [the defendant’s] arbitration agreement (including its allegedly pro-consumer features) and the Plaintiffs’ complaint, and concluded that it would not be cost-effective for them to pursue such claims ... except on an aggregated basis.” Id. The Eleventh Circuit concluded that
faithful adherence to Concepcion requires the rejection of the Plaintiffs’ argument. The Plaintiffs’ evidence goes only to substantiating the very public policy arguments that were expressly rejected by the Supreme Court in Concepcion — namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted. The Court observed that California’s Discover Bank rule too had “its origins in California’s unconscionability doctrine and California’s policy against exculpation.” Concepcion, 131 S.Ct. at 1746.... Indeed, the Concepcion consumer-plaintiffs’ brief to the Supreme Court repeatedly emphasized that California’s rule was a “fact-specific” inquiry that only screened out class action bans “in circumstances where they would ... be exculpatory.” Concepcion Resp. Br. at *20; see also id. at *12 (“The FAA favors arbitration, not exculpation.”).
Id. The Eleventh Circuit also reasoned that the rule suggested by the plaintiffs in that case, like the Discover Bank rule, “would equally encompass the field of small-value consumer fraud claims” and “would preserve mandatory class actions for all ‘small but numerous’ consumer claims.” Id.
The Eleventh Circuit concluded that “[Unquestionably, if Florida adopted such a rule, it would be preempted by the FAA, under the reasoning in Concepcion.” Id. at 1215. More recently, the Eleventh Circuit again rejected this argument in Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1235 (11th Cir.2012), stating that “[t]he reasoning of Cruz applies equally here. The Supreme Court in Concepcion expressly rejected the notion that the state law should not be preempted because the class action waiver would-effectively shield the defendant from liability.”[8]
*1188 We agree with the reasoning of the Eleventh Circuit and conclude that the record evidence presented in this case actually substantiates the public policy arguments rejected by the United States Supreme Court in Concepcion. The rule suggested by Kelly and the Fourth District would encompass all cases in which a plaintiff presented expert testimony from attorneys that they “would not represent consumers in individual small claims suits.” McKenzie, 55 So.3d at 623. This would be, in effect, based on whether the claims were too small for attorneys to accept on an individual basis — an argument squarely rejected in Concepcion as a basis on which to require class procedures. See Concepcion, 131 S.Ct. at 1753 (“The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” (citation omitted)). We conclude that the basis for invalidating the class action waiver propounded by Kelly based on the facts of this case is foreclosed by Concepcion.
CONCLUSION
In light of the United States Supreme Court’s recent decision in Concepcion, we conclude that the FAA preempts invalidating the class action waiver in this case on the basis of the waiver being void as against public policy. Accordingly, we quash the Fourth District’s decision below and decline to answer the certified question as it is now moot.
It is so ordered.
QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J, and LEWIS, J., concur in result.

. The Chamber of Commerce of the Untied States of America filed an amicus brief in support of the Petitioners, McKenzie Check Advance of Florida, LLC, et al.

. In its decision, the Fourth District ruled upon the following question, which it certified to be of great public importance:
WHEN ASSERTED IN A CLAIM INVOLVING A VIOLATION OF FDUTPA OR ANOTHER REMEDIAL STATUTE, DOES A CLASS ACTION WAIVER IN AN ARBITRATION AGREEMENT VIOLATE PUBLIC POLICY WHEN THE TRIAL COURT IS PERSUADED BY EVIDENCE THAT SUCH A WAIVER PREVENTS CONSUM *1178 ERS FROM OBTAINING COMPETENT COUNSEL?
Id. at 629. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

. The Discover Bank rule refers to the California Supreme Court case of Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1110 (2005), which held that a class action waiver in a consumer contract of adhesion is unenforceable "in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."

. Respondent Tiffany Kelly urges that this Court could also affirm the Fourth District's decision below on the basis that the class action waiver in this case is unconscionable. We decline to address this issue because it was not discussed in the Fourth District's decision below and is outside the scope of, and unrelated to, the certified question before this Court. See Major League Baseball v. Morsani, 790 So.2d 1071, 1080 n. 26 (Fla.2001) (declining to address a claim "because it is outside the scope of the certified question”); State v. Perry, 687 So.2d 831, 831 (Fla.1997) ("We decline to review the second cross-appeal issue raised by respondent because the issue is unrelated to the certified question upon which this Court's jurisdiction is based.").

. Although Concepcion involved a challenge to a class action waiver based on the contract defense of unconscionability, it applies equally to other contract defenses, including the defense of void as against public policy. See Concepcion, 131 S.Ct. at 1748. In fact, the Supreme Court used an example of a public policy defense to illustrate a state law that would be inconsistent with the FAA’s purposes: a rule "finding unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery.” Id. at 1747. Shortly after Concepcion, the Supreme Court granted certiorari relief and vacated a decision of the South Carolina Supreme Court, which had held that a class action waiver was unenforceable on public policy grounds, and remanded for reconsideration in light of Concepcion. See Sonic Auto., Inc. v. Watts, - U.S. -, 131 S.Ct. 2872, 179 L.Ed.2d 1184 (2011). Moreover, courts have subsequently applied Concepcion to cases involving the contract defense of void as against public policy. See, e.g., Cruz v. Cingular Wireless, LLC, 648 F.3d 1205 (11th Cir.2011); NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J.Super. 404, 24 A.3d 777 (N.J.Super.Ct.App.Div.2011); Wallace v. Ganley Auto Group, 2011 WL 2434093 (Ohio Ct.App. June 16, 2011); see also Arellano v. T-Mobile USA, Inc., 2011 WL 1842712, at *2 (N.D.Cal. May 16, 2011) (stating that Concepcion "decided that states cannot refuse to enforce arbitration agreements based on public policy”); Kaltwasser v. AT & T Mobility LLC, 812 F.Supp.2d 1042, 1050 (N.D.Cal.2011) (observing that "Discover Bank itself was based upon public policy rationales intertwined with the generally applicable doctrine of unconsciona-bility”).

. See Preston v. Ferrer, 552 U.S. 346, 363, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (Thomas, J., dissenting) (stating that the FAA "does not apply to proceedings in state courts"); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (Thomas, J., dissenting) (same); Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 460, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (Thomas, J., dissenting) (same); Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 689, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (Thomas, J., dissenting) (same); Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 285, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (Thomas, J., dissenting) (same).

. See Kilgore v. KeyBank, Nat'l Ass'n, 673 F.3d 947, 961-62 (9th Cir.2012) (stating that the Mitsubishi Motors exception to the FAA’s applicability "applies only to federal statutory claims” and that "the very nature of federal preemption requires that state law bend to conflicting federal law — no matter the purpose of the state law. It is not possible for a state legislature to avoid preemption simply because it intends to do so. The analysis of whether a particular statute precludes waiver of the right to a judicial forum — and thus whether that statutory claim falls outside the FAA's reach — applies only to federal, not state, statutes. On the several occasions that the Supreme Court has considered whether a statutory claim was unsuitable for arbitration, the claim at issue was a federal one.”); Coneff 673 F.3d at 1158 n. 2 (“Mitsubishi [Motors], Gilmer, Green Tree and similar decisions are limited to federal statutory rights.”); Stutler v. T.K. Constructors Inc., 448 F.3d 343, 346 (6th Cir.2006) (stating that Green Tree was limited by its "plain language to the question of whether an arbitration clause is enforceable where federal statutorily provided rights are affected” and distinguishing the case before it on the grounds that "no federally protected interest is at stake" because the plaintiffs "through diversity jurisdiction, seek to enforce contractual rights provided by state law”).

. The Eleventh Circuit certified questions to this Court in Pendergast, asking how contractual unconscionability should be analyzed under Florida law and whether a class action waiver in an agreement to arbitrate in a consumer contract for wireless telephone service is unconscionable under Florida law. See Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1143-44 (11th Cir.2010). After the United States Supreme Court subsequently issued its decision in Concepcion, Sprint filed in this Court a motion to decline jurisdiction, which we granted, returning the case to the Eleventh Circuit. See Pendergast v. Sprint *1188 Nextel Corp., SC10-19, 2012 WL 2948594, at *1 (Fla.Sup.Ct. order filed July 17, 2012). The Eleventh Circuit concluded that the class action waiver was enforceable under Concepcion. See Pendergast, 691 F.3d at 1236.