NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


SACHSE CONSTRUCTION AND          )
DEVELOPMENT CORPORATION, a        )
Florida corporation,              )
                                  )
        Appellant,                )
                                  )
v.                                )     Case No.  2D17-4276
                                  )
AFFIRMED DRYWALL, CORP., a Florida )
corporation, and TRAVELERS        )
CASUALTY AND SURETY COMPANY OF )
AMERICA, a foreign insurance company, )
                                  )
        Appellees.                )
_____ )

Opinion filed July 18, 2018.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Collier County;
Lauren L. Brodie, Judge.

Richard B. Akin, II, and J. Matthew
Belcastro of Henderson, Franklin, Starnes
& Holt, P.A., Fort Myers, for Appellant.

Steven M. Siegfried and Nicholas D.
Siegfried of Siegfried, Rivera, Hyman,
Lerner, De La Torre, Mars & Sobel, P.A.,
Coral Gables, for Appellee Affirmed Drywall
Corp.

No appearance for remaining Appellee.

SILBERMAN, Judge.

Based on a subcontract to perform drywall work (the Subcontract), Affirmed Drywall Corp. filed a two-count complaint for (1) breach of contract against Sachse Construction and Development Corporation and (2) an action against bond naming Sachse and Travelers Casualty and Surety Company. Sachse appeals a nonfinal order determining that the arbitration clause in the Subcontract is void and unenforceable because it requires arbitration in Michigan of a contract dispute relating to the improvement of real property in Florida, in violation of section 47.025, Florida Statutes (2016). We reverse that order because if the Federal Arbitration Act (FAA) applies, it preempts section 47.025. However, because the trial court did not first determine whether the contract involves interstate commerce so as to make the FAA applicable, on remand the trial court must address the question of interstate commerce.

In October 2016, Sachse, as contractor, and Affirmed Drywall, as subcontractor, entered into the Subcontract. The Subcontract reflects that Sachse is a Michigan Limited Liability Company (LLC) with an address in Detroit and reflects an address in Coral Gables, Florida, for Affirmed Drywall. Affirmed Drywall was to provide all labor, materials, and equipment associated with drywall work for the improvement of real property in Naples, Florida. Paragraph 23 of the Subcontract states that any dispute between Sachse and Affirmed Drywall "in any way relating to the Work or this Subcontract may be submitted to mediation and/or arbitration pursuant to the Construction Industry Rules of the American Arbitration Association then in effect." Paragraph 23 also provides that arbitration "shall take place at the American Arbitration Association's Southfield, Michigan, office or within 20 miles thereof." Paragraph 21

- 2 -

provides that the "Subcontract shall be governed by and construed in accordance with the laws of the State of Michigan."

On March 20, 2017, Affirmed Drywall filed its two-count complaint for breach of contract and an action against bond. Sachse filed a motion to dismiss or to compel arbitration in which it argued that the Subcontract is governed by and enforceable in accordance with the FAA. It contended that the FAA supersedes any inconsistent state law, that Florida courts must enforce valid arbitration agreements within the scope of the FAA, and that the trial court should compel the parties to proceed to arbitration in Michigan pursuant to the Subcontract's terms.

Affirmed Drywall opposed the motion and contended that Sachse failed to adequately allege facts that evidence interstate commerce. Affirmed Drywall also argued that under Florida law the venue provision requiring arbitration in Michigan was void as against public policy and cited, among other things, section 47.025.

At the hearing on the motion, Sachse argued that the Subcontract provides that the laws of Michigan control the contract, so section 47.025 does not even apply. But counsel stated that "far more importantly," as argued in Sachse's motion to compel arbitration, the contract involves interstate commerce because the contract shows that Sachse's principal place of business is in Detroit, Michigan, and Affirmed Drywall's principal place of business is Coral Gables, Florida; thus, Sachse's counsel argued that the FAA applies. In its motion to compel and on appeal, Sachse cites federal and Florida law, and neither party mentions what Michigan law provides. Sachse argued to the trial court that the FAA preempts section 47.025.

Affirmed Drywall argued that an evidentiary hearing would be necessary to determine if the contract involved interstate commerce. Affirmed Drywall further argued that section 47.025 prohibited the enforcement of a provision that requires venue outside the State of Florida in a contract concerning improvements to real property. Thus, Affirmed Drywall argued that the arbitration agreement violated public policy, a generally applicable contract defense that could be used to invalidate the agreement, relying upon Shotts v. OP Winter Haven, Inc., 86 So. 3d 456 (Fla. 2011).

The trial court stated that if it decided the agreement violated public policy, then arbitration would not be compelled. If it did not, then the trial court recognized that the issue of whether interstate commerce was involved would need to be determined. The trial court took the matter under advisement.

Later, the trial court denied the motion to compel arbitration. In its order, the trial court determined that "the arbitration clause that required arbitration of disputes arising out of the improvement to real property within the state of Florida to take place in the state of Michigan" was void and unenforceable, citing to Shotts and section 47.025. The trial court implicitly rejected Sachse's preemption argument because the order did not mention the FAA or preemption. Apparently, the court did not consider whether arbitration could be ordered in Florida rather than in Michigan. The order further directed Sachse to file its answer within twenty days.

On appeal, Sachse contends that the Subcontract involves interstate commerce. We discuss later in this opinion the threshold question of interstate commerce that the trial court did not answer and which must be addressed on remand.

- 4 -

Sachse also contends that the FAA preempts section 47.025, leaving the arbitration provision enforceable under the FAA.  We now turn to that issue.

**The FAA and Preemption**

Section 47.025, entitled "Actions against contractors," provides as follows:

> Any venue provision in a contract for improvement to real property which requires legal action involving a resident contractor, subcontractor, sub-subcontractor, or materialman, as defined in part I of chapter 713, to be brought outside this state is void as a matter of public policy. To the extent that the venue provision in the contract is void under this section, any legal action arising out of that contract shall be brought only in this state in the county where the defendant resides, where the cause of action accrued, or where the property in litigation is located, unless, after the dispute arises, the parties stipulate to another venue.

(Footnote omitted.)

Our review of whether the FAA preempts Florida law is de novo as a question of law.  See McKenzie Check Advance of Fla., LLC v. Betts, 112 So. 3d 1176, 1180 (Fla. 2013).  The FAA "establishes a liberal federal policy favoring arbitration agreements."  Id. at 1180-81.  The FAA applies in both federal and state courts.  Id. at 1185; Global Travel Mkt., Inc. v. Shea, 908 So. 2d 392, 396 (Fla. 2005).  Section 2 of the FAA provides that an arbitration provision in a contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2012).  "Commerce" includes "commerce among the several States or with foreign nations."  9 U.S.C. § 1.

Enacted pursuant to the Commerce Clause of the United States Constitution, the FAA preempts conflicting or inconsistent state law.  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341, 343-44 (2011); Southland Corp. v. Keating, 465 U.S.

1, 10-11 (1984); Gilman + Ciocia, Inc. v. Wetherald, 885 So. 2d 900, 903 (Fla. 4th DCA 2004); Jensen v. Rice, 809 So. 2d 895, 899 (Fla. 3d DCA 2002).  Thus, a Florida court must enforce an arbitration agreement that is valid and enforceable under the FAA even when the agreement would be unenforceable under Florida law.  Jensen, 809 So. 2d at 899.

The saving clause of § 2 of the FAA allows "arbitration agreements to be declared unenforceable based on 'generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' " McKenzie Check Advance, 112 So. 3d at 1181 (quoting Concepcion, 563 U.S. at 339). "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " Concepcion, 563 U.S. at 344 (alteration in original) (quoting Volt Info. Scis. Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).  "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Concepcion, 563 U.S. at 343.

In Shotts, which Affirmed Drywall and the trial court relied upon, the Florida Supreme Court held that in determining whether a valid agreement to arbitrate exists, the court, not the arbitrator, decides whether an arbitration agreement violates public policy and is unenforceable.  86 So. 3d at 471.  The supreme court recognized that "[i]n Florida, an arbitration clause in a contract involving interstate commerce is subject to the Florida Arbitration Code (FAC), to the extent the FAC is not in conflict with

the FAA."[1]  Id. at 463-64.  The Shotts court stated that public policy is one of the

"  'generally applicable contract defenses' for purposes of section 2" of the FAA because

"if an arbitration agreement violates public policy, no valid agreement exists."  Id. at

464-65.  There, the court determined that "the limitations of remedies provisions in [an

agreement regarding a nursing home] violate public policy, for they directly undermine

specific statutory remedies" provided by the Florida Legislature.  Id. at 474.  The court

concluded that the challenged provisions were unenforceable.  Id. at 474-75.

  The Shotts court recognized that courts are prohibited from "invalidat[ing]

arbitration agreements under state laws applicable *only* to arbitration provisions."  Id. at

463 (quoting Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996)).  In Casarotto,

the Supreme Court determined that the FAA preempted a Montana statute that required

all arbitration agreements to comply "with a special notice requirement not applicable to

contracts generally."  517 U.S. at 687.  The Court stated that the FAA's goals "are

antithetical to threshold limitations placed specifically and solely on arbitration

provisions."  Id. at 688.  The Court pointed out that the Montana statute "place[d]

arbitration agreements in a class apart from 'any contract,' and singularly limit[ed] their

validity."  Id.

  Since Shotts, our supreme court in McKenzie addressed an arbitration

agreement that contained a class action waiver that the Fourth District had determined

was a violation of Florida public policy.  112 So. 3d at 1177.  The arbitration agreement

in McKenzie contained a severability clause, unlike the arbitration provision at issue

---

[1]The Revised Florida Arbitration Code, effective July 1, 2013, would be applicable to the present case.  See § 682.01, Fla. Stat. (2016); Ch. 2013-232, § 40 at 2767, Laws of Fla.  The parties do not address this.

here, but the parties in McKenzie stipulated "that if the class action waivers were held to be unenforceable, the arbitration provisions would be stricken." Id. at 1179. Relying upon Concepcion, the McKenzie court determined "that the FAA preempts invalidating the class action waiver in this case on the basis of it being void as against public policy." Id. at 1178.

The McKenzie court discussed the saving clause of § 2 and stated that it reflected the " 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.' " Id. at 1181 (quoting Concepcion, 563 U.S. at 339). Arbitration agreements cannot be declared unenforceable by "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Id. (quoting Concepcion, 563 U.S. at 339). The court recognized that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Id. at 1185-86 (quoting Concepcion, 563 U.S. at 351).

Sachse relies upon R.A. Bright Construction, Inc. v. Weis Builders, Inc., 930 N.E.2d 565 (Ill. App. Ct. 2010), and OPE International LP v. Chet Morrison Contractors, Inc., 258 F.3d 443 (5th Cir. 2001), to support its argument that the FAA preempts section 47.025. OPE dealt with a similar Louisiana statute providing that with respect to construction contracts for work to be done within Louisiana any provision which "[r]equires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state" is "void and unenforceable as against public policy." 258 F.3d at 446 (quoting La. Stat. Ann. § 9:2779 (1998)). The court recognized that the FAA prohibited "States from singling out arbitration provisions for suspect status" and required that the courts place arbitration provisions "upon the same footing as other

- 8 -

contracts."  Id. at 447 (quoting Casarotto, 517 U.S. at 687).  The court determined that "[t]he statute directly conflicts with § 2 of the FAA because the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum" and that requirement was "not applicable to contracts generally."  Id.

R.A. Bright relied upon OPE in determining that the FAA preempted a similar Illinois statute.  930 N.E.2d at 571-72.  The statute provided that in building and construction contracts to be performed in the state a provision requiring litigation or arbitration to take place in another state was void as against public policy.  Id. at 571.  In determining that the FAA preempted the statute, the court stated that the statute was "not applicable to all contracts generally, but only to contracts involving building and construction."  Id. at 572; see also LaSalle Grp., Inc. v. Electromation of Del. Cty., Inc., 880 N.E.2d 330, 333 (Ind. Ct. App. 2008) (stating that the Indiana statute applied "only to dispute resolution forum selection clauses in" contracts for the improvement of real property and not to "any" contract).

Also, in United States ex rel. TGK Enterprises, Inc. v. Clayco, Inc., 978 F. Supp. 2d 540, 548 (E.D.N.C. 2013), the federal court determined that the FAA preempted a general North Carolina statute and one applying specifically to construction contracts because the statutes prohibited the out-of-state prosecution of an action or arbitration of a dispute.  The court explained that where a statute's enforcement was sought to invalidate the arbitration agreement calling for arbitration in Missouri, this "would 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' "  Id. (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)).

- 9 -

Even if section 47.025 "is desirable for unrelated reasons," Florida "cannot require a procedure that is inconsistent with the FAA." McKenzie, 112 So. 3d at 1184 (quoting Concepcion, 563 U.S. at 351.) Section 2 specifically provides that arbitration provisions in contracts involving commerce "shall be valid, irrevocable, and enforceable" and that the exception to enforcement of an arbitration provision is "grounds as exist at law or in equity for the revocation of any contract." (Emphasis added.) Thus, the language of § 2, along with OPE, R.A. Bright, and LaSalle, support our determination that the FAA preempts section 47.025.

And not only did the trial court determine that section 47.025 prohibited arbitration in Michigan, but also the trial court denied the motion to compel arbitration and ordered Sachse to file its answer in twenty days.[2] Thus, it appears that the trial court prohibited arbitration in both Michigan and Florida. In Clayco, the court determined that the state statute conflicted with the FAA when the result was to invalidate the arbitration agreement and require resolution by a judicial forum. 978 F. Supp. 2d at 548. That was the consequence in this case as well. Because the trial court's order requires the parties to litigate the matter, the result is to "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Id. (quoting Southland Corp., 465 U.S. at 10). Because the FAA preempts section 47.025 if the FAA is applicable, we reverse the trial court's order that finds the arbitration provision unenforceable and requires the defendants to answer the complaint.

_____

[2]We note that the Subcontract does not contain a severability clause, and the parties have not argued this issue to us.

- 10 -

## Interstate Commerce

As indicated earlier, the trial court never addressed the threshold question of whether the Subcontract involves interstate commerce. Because we have determined that the FAA preempts section 47.025 if the FAA is applicable, the trial court must determine on remand whether the Subcontract involves interstate commerce. That question should have been resolved first to determine if the FAA even applies to the Subcontract, perhaps making unnecessary the preemption analysis.

We do not agree with Sachse that the face of the Subcontract clearly shows that interstate commerce is involved by virtue of the fact that Sachse is a Michigan LLC. In Hound Mounds, Inc. v. Finch, 153 So. 3d 368, 370 (Fla. 4th DCA 2014), which Sachse relies upon, the court determined that a franchise agreement between a Texas corporation and Florida resident involved interstate commerce. Sachse also relies upon Pilot Catastrophe Services, Inc. v. Fouche, 145 So. 3d 151, 153 (Fla. 5th DCA 2014), in which a Florida employee filed a lawsuit against her employer, an Alabama corporation, for disability and gender discrimination. The Fifth District did state that "[a] contract between a Florida resident and a foreign corporation is an agreement evidencing a transaction involving interstate commerce." Id. at 154. The court cited Gilman + Ciocia, Inc. v. Wetherald, 885 So. 2d 900, 904-05 (Fla. 4th DCA 2004), for this proposition. 145 So. 3d at 154. But in Gilman, in addition to the parties to the contract being a Florida resident and a New York corporation, the contract was an employment contract in which the Florida employee provided accounting, insurance, and broker services. 885 So. 2d at 902. The court listed seven provisions in the parties' agreement it considered in determining that interstate commerce was involved, such as the employee providing services of buying and selling securities and

- 11 -

the parties' sharing of data, exchanging correspondence, and transferring funds between New York and Florida.  Id. at 904-05.

The present case does not involve a franchise agreement or employment agreement.  Rather, it involves a contract to improve real property in Florida.  Further, while Sachse maintains that it is a Michigan LLC, Affirmed Drywall alleged in its complaint that "Contractor [Sachse] is a Florida Corporation, authorized to, and doing business in Collier County, Florida."  The parties did not address this allegation in light of the interstate commerce analysis.  Because the trial court never ruled on the issue of whether the Subcontract involves interstate commerce and the record is not conclusive on this issue, we direct the trial court to address this issue on remand.

Reversed and remanded with directions.


CRENSHAW and SLEET, JJ., Concur.